934 F.2d 1462
 PLANNED PARENTHOOD ASSOCIATION OF THE ATLANTA AREA, INC.,
Planned Parenthood of East Central Georgia, Inc., Orrin
Moore, M.D., individually and on behalf of their minor
patients and all others similarly situated,
Plaintiffs-Counterclaim Defendants-Appellees, Cross-Appellants,
v.
Zell MILLER, Governor, individually and in his official
capacity, Defendant-Counterclaim
Plaintiff-Appellant, Cross-Appellee.
 No. 88-8599.
 United States Court of Appeals,
Eleventh Circuit.
 June 17, 1991.
Rehearing Denied July 30, 1991.
 
 Kathryn Allen, Sr. Asst. Atty. Gen., Atlanta, Ga., for defendant-counterclaim plaintiff-appellant-cross appellee.
 Dara Klassel, Planned Parenthood Federation of America, Inc., New York City, Elizabeth J. Appley, Tony G. Powers, Merritt & Tenney, Atlanta, Ga., for plaintiffs-counterclaim defendants-appellees-cross appellants.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, ANDERSON and CLARK, Circuit Judges.
 TJOFLAT, Chief Judge:
 
 
 1
 Plaintiffs in this case, an abortion counseling facility, an abortion provider,[1] and a physician, challenge the constitutionality of the Georgia Parental Notification Act, Ga.Code Ann. Secs. 15-11-110 to -118 (1990)--an act compelling persons, under threat of criminal sanctions, to notify an unemancipated minor's parent or guardian before performing an abortion on her.[2]
 
 
 2
 The Georgia legislature enacted its first parental notice law on April 14, 1987. See Parental Notification Act, 1987 Ga. Laws 1013. This act required a pregnant minor to notify a parent or guardian before obtaining an abortion; she could verify that she had given notice in two ways: (1) her parent or legal guardian could accompany her to the abortion facility and provide an affidavit attesting to parentage or guardianship or (2) another adult could accompany her to the facility and furnish an affidavit stating that the minor had notified a parent, legal guardian, or person standing in loco parentis. If the minor could not--or did not want to--comply with these requirements, she could petition the court to waive them. Id.
 
 
 3
 Following suit by Planned Parenthood, the district court enjoined the implementation of the Act. See Planned Parenthood Ass'n v. Harris, 670 F.Supp. 971 (N.D.Ga.1987) (Planned Parenthood I ).[3] The court held, inter alia, that the "accompanying adult" feature of the Act unduly burdened the liberty interest of a minor who willingly involved a parent in her abortion decision and, in addition, intruded on the family's privacy, i.e., its "interest in avoiding disclosure of personal matters." The court also addressed the constitutionality of the Act's judicial bypass procedure, holding that it did not guarantee sufficient expedition and confidentiality to conform to the Supreme Court's decision in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion).[4] The State appealed.
 
 
 4
 While the appeal was pending, however, the Georgia legislature amended the Act in an attempt to harmonize it with the district court's ruling. See Parental Notification Act Amendments, 1988 Ga.Laws 661. Planned Parenthood, believing that the amendments did not cure the Act's constitutional defects, again sued to enjoin its operation. See Planned Parenthood Ass'n v. Harris, 691 F.Supp. 1419 (N.D.Ga.1988) (Planned Parenthood II ). On June 16, 1988, a panel of this court remanded Planned Parenthood I to the district court, which, pursuant to Fed.R.Civ.P. 42, consolidated the two cases. On July 11, 1988, the district court entered an order enjoining the implementation of the amended Act.[5] The State now appeals this order.
 
 I.
 
 5
 The Act forbids a physician, or any other person, from performing an abortion upon an unemancipated minor unless (1) the minor signs a form indicating that she "freely and without coercion" consents to the abortion and (2) one of her parents or guardians is notified, actually or constructively, in accordance with the Act. Ga.Code Ann. Sec. 15-11-112(a).[6] Notice may be given in three ways. First, the physician, or his agent, may notify the minor's parent or guardian in person or by telephone that the minor wants to have an abortion. If the parent or guardian indicates either that consultation with the minor is unnecessary or that he previously had been advised of the minor's wishes, the abortion may proceed immediately; otherwise, the minor must wait twenty-four hours. Second, the physician, or his agent, may notify the parent or guardian by "regular mail." If the physician chooses this method of notification, he may rely on a statutory provision that deems delivery to have occurred forty-eight hours after mailing "unless delivery is otherwise sooner established." A twenty-four hour waiting period again applies unless the parent or guardian tells the physician that he already has been notified that the minor is seeking an abortion or that he does not need time to consult with her. Third, if the minor wishes to further expedite the process, the Act permits her parent or guardian to furnish a statement affirming that he has been notified. Under this alternative, the abortion may proceed immediately. Id.
 
 
 6
 If the minor, for whatever reason, does not want to notify her parents, she can petition a juvenile court to waive the Act's requirements. See Ga.Code Ann. Sec. 15-11-112(b).[7] The Act instructs the juvenile court to grant a waiver if it finds either that the minor is mature, id. Sec. 15-11-114(c)(1), or that notice to her parent would not be in her best interests, id. Sec. 15-11-114(c)(2).
 
 
 7
 The minor's waiver petition proceeds in accordance with the Act and its implementing rules, the Uniform Juvenile Court Rules and the Court of Appeals Rules. These permit the minor to file her petition in the juvenile court of any Georgia county, id. Sec. 15-11-112(b); whereupon, a guardian ad litem is appointed to assist her, Ga.Unif.Juv.Ct.R. 23.2. The court must conduct a hearing on the petition within three days of the filing date, excluding Saturdays, Sundays, and holidays, Ga.Code Ann. Sec. 15-11-113; Ga.Unif.Juv.Ct.R. 23.5, and then render its decision within twenty-four hours of the hearing, Ga.Code Ann. Sec. 15-11-114(d); Ga.Unif.Juv.Ct.R. 23.6. If the hearing is not held, or the decision not issued, within these time periods, the petition is deemed to be granted. Ga.Code Ann. Sec. 15-11-113, -114(d).
 
 
 8
 If the juvenile court denies the minor's petition, she may appeal. Id. Sec. 15-11-114(e). The Georgia Court of Appeals Rules require that she initiate the appeal by filing a notice of appeal and a certified copy of the juvenile court order with the appellate court. Ga.Ct.App.R. 51(c). Within five calendar days[8] from the date of filing, the juvenile court must deliver the record to the court of appeals, which then must issue its decision no more than five days from the date it receives the record. Id. R. 51(c), (e).
 
 
 9
 To ensure the confidentiality of the hearing and appeals process, see Ga.Code Ann. Sec. 15-11-114(b), (e), the Act mandates that the record be sealed, id. Sec. 15-11-114(d).[9] In addition to this general directive, the Uniform Juvenile Court Rules instruct the court to redact the name of the minor if it appears in any of the public records, including the transcript of the proceeding, Ga.Unif.Juv.Ct.R. 23.7, and the Court of Appeals Rules mandate that the record "be considered and treated by the [appellate] Court as confidential"--its contents must be sealed upon conclusion of the appeal, and they may not be disclosed except upon order of the court. Ga.Ct.App.R. 51(j).
 
 II.
 
 10
 Planned Parenthood challenges two aspects of the Act's notification requirement and five aspects of the judicial bypass procedure.[10] It contends that the notice provision is defective because (1) it mandates regular mail notification of parents over more expeditious means and (2) it subjects minors to a twenty-four hour delay following notification. Planned Parenthood claims that these requirements place an undue burden on a minor's fundamental right to an abortion since they are not narrowly tailored to further an important state interest.[11] Planned Parenthood also challenges the judicial bypass procedure established by the Act and its implementing rules because (1) it does not provide a mechanism for a minor to prove that the state has failed to act upon her petition within the requisite statutory time frame (and, thus, that she is constructively authorized to obtain an abortion); (2) it does not adequately preserve a minor's anonymity; (3) it places a potential third-party veto over a minor's decision by requiring the juvenile court intake officer to divert a minor's petition or recommend its dismissal if he concludes that this is in the best interests of the minor and the public; (4) it burdens a minor's abortion right by mandating the appointment of a guardian ad litem, who may oppose the petition based on his own view of the minor's best interests; and (5) it is not sufficiently expeditious. With these defects, Planned Parenthood argues, the Georgia procedure cannot comport with Bellotti v. Baird.
 
 
 11
 After reviewing these challenges, the district court enjoined implementation of the amended Act, holding that it unduly burdened the minor's liberty and privacy interests. The court first determined that the regular mail requirement was unconstitutional. According to the court, the legislature contemplated delivery only by United States Postal Service first-class mail and not by more expeditious means of delivery such as express mail[12] or Federal Express. Given this interpretation, the requirement was invalid--the State had not offered any justification for its decision to restrict the permissible means of written notification. The court did, however, uphold the twenty-four hour waiting period, noting that this requirement fostered the State's interest in promoting family consultation.[13]
 
 
 12
 The district court also found several infirmities in the judicial bypass procedure. The court cited (1) the Act's failure to provide constitutionally adequate anonymity; (2) the absence of a requirement that court officials provide written documentation to a minor when a constructive order issues; (3) the possible veto of a minor's decision by the intake officer; and (4) the appointment of a guardian ad litem in all cases without sufficient articulation of his role in the bypass procedure. The court therefore enjoined the implementation of the Act.
 
 
 13
 In reviewing a district court's grant of a preliminary injunction, this court will reverse only when the district court abuses its discretion. Findings of fact made in connection with a grant of a preliminary injunction are set aside only if clearly erroneous. Conclusions of law, however, are reviewable de novo. Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1444 (11th Cir.1991); see also Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991) (courts of appeals must review state-law determinations of district courts de novo). Applying these standards to the instant case, we conclude that the district court abused its discretion.[14]
 
 
 14
 We organize our discussion of the amended Act as follows. In part III of this opinion, we examine the Act's notification requirements, demonstrating that, taken together, they do not unduly burden the minor's abortion decision. In part IV, we show that the Georgia Act's judicial bypass procedure, even if judged pursuant to the Bellotti requirements, survives constitutional scrutiny. Accordingly, we hold that the district court improperly enjoined the implementation of the Act.[15]
 
 III.
 
 15
 Planned Parenthood first claims that Georgia's regular mail notification requirement and twenty-four hour waiting period unduly burden a minor's abortion decision. We address these issues in turn.
 
 A.
 
 16
 When a minor asks her physician to perform an abortion, the physician may notify the minor's parent in two ways. First, the physician, or his agent, may inform the parent of the minor's decision in person or by telephone. Second, he, or his agent, may notify the parent by "regular mail," with delivery deemed to have occurred after forty-eight hours, unless he proves that his letter arrived sooner. Ga.Code Ann. Sec. 15-11-112(a)(1)(C). If the minor wishes further to expedite the process, she may take the physician a statement from either of her parents, showing that the parent was notified. Id. Sec. 15-11-112(a)(1)(A). By choosing the latter option, the minor relieves the physician of any duty to contact her parent.
 
 1.
 
 17
 Planned Parenthood makes two attacks on these provisions. It first contends that by limiting written notification by the physician to notice by regular mail, the Georgia Act is not narrowly tailored to further the State's interests: the Act excludes other means of written notification that are more expeditious, namely, express mail and Federal Express. We note at the outset that while a statute must be narrowly tailored to the State's interest, an abortion statute will not be invalidated "because it does not correspond perfectly in all cases to the asserted state interest." City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 438, 103 S.Ct. 2481, 2497, 76 L.Ed.2d 687 (1983) (Akron I ); see also id. ("the lines drawn ... must be reasonable " (emphasis added)). Thus, while we agree that the Georgia legislature has not denominated all conceivable forms of expeditious notification, we find that the contours of the Act are justified by, and are sufficiently tailored to, the State's interests and therefore survive constitutional scrutiny. Georgia provides suitable avenues for a minor who wishes quickly to notify her parents and proceed with her abortion; at the same time, it accommodates the State's interest in ensuring that the minor's decision is voluntary and informed.
 
 
 18
 We believe that by limiting written notice to notice by the United States Postal Service--and excluding notice by private carriers such as Federal Express and Airborne Express--Georgia has enacted reasonable regulations that foster its important state interest in protecting immature minors. When a state drafts a parental notice law, speedy delivery is not the state's only legitimate concern; the legislature also will want to craft its legislation to ensure that the parent actually receives notice--only then can consultation between parent and minor take place. Accordingly, a state may require that the physician give notice through a means that is highly reliable and minimizes the possibility of interception. The legislature may permit notice by telephone or in person, or by some other means that guarantees sufficient reliability; it may refuse to recognize notice where a physician simply sends a note home with a minor or uses an uncertified mail service since, with either of these methods, there is a substantial likelihood that the notice will not reach its destination. Georgia's designation of the United States Postal Service over private delivery services advances these interests; the United States Postal Service operates under stringent regulations, see 39 C.F.R. Secs. 1.1-3003.14 (1990), which promote greater reliability, expedition, and confidentiality than delivery by private carrier. These governmental assurances sufficiently support the Georgia limitation.
 
 
 19
 Planned Parenthood next argues that, even if Georgia properly excluded private delivery services, it should allow a physician to notify the parent by express mail--a service offered by the United States Postal Service--as an alternative to notice by telephone, in person, or by regular first-class mail. According to Planned Parenthood, Georgia excluded express mail delivery for no discernable reason. Even if Georgia had limited its statute in this manner,[16] we believe that it would survive constitutional scrutiny. As we state above, a statute need not perfectly correspond to a state's asserted interests to survive strict scrutiny. When a statute specifies several alternative means of notification, as long as these means, on the whole, are narrowly tailored to the state's interest in promoting parental consultation, we must uphold it.
 
 
 20
 That the Georgia Act is sufficiently tailored to the State's interest in protecting immature minors is apparent when we compare it to the notice provision examined in Ohio v. Akron Center for Reproductive Health, --- U.S. ----, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (Akron II ). In Akron II, the Court upheld an Ohio statute that requires physicians to give notice by telephone or in person, if the physician can do so through "reasonable effort." See id. at ----, 110 S.Ct. at 2977. Only if those efforts fail may the physician resort to constructive notice by both regular and certified mail;[17] delivery then is deemed to have occurred after forty-eight hours. Thus, under the Ohio statute, if a physician cannot reach a parent in person or by telephone, the only other option is to wait forty-eight hours under the constructive delivery provision. The Georgia Act is less restrictive than the Ohio statute in two respects. First, although it permits actual notice in person and by telephone like the Ohio statute, the Georgia Act allows a physician to notify a parent by regular mail before attempting these means of notification.[18] Second, the Georgia statute provides that once a physician sends notice by regular mail, he can proceed with an abortion before the forty-eight hour delivery period expires if he can prove that the parent actually received his notice earlier. Georgia's decision to allow actual notice by regular mail thus supplements what is constitutionally required--it could have required notice exclusively by telephone or in person, allowing constructive notice only as an alternative. Accordingly, we hold that the Georgia Act provides sufficient alternative means of notification that effectuate, and are narrowly tailored to, the State's interests.
 
 2.
 
 21
 Planned Parenthood further contends that the Act's constructive delivery provision is constitutionally infirm since it forces a minor to wait seventy-two hours to obtain an abortion if her physician cannot contact her parents by telephone, in person, or by regular mail.[19] When a minor who seeks an abortion is unable to notify her parent, her decision to abort still must be protected--and the Act does this by permitting a physician to send a letter to the minor's parent and deeming delivery forty-eight hours later. The constructive delivery provision ensures that, with no parental action, and no actual notice to her parent, a minor can proceed with her abortion. She simply must wait seventy-two hours from the time her physician sends the letter: forty-eight hours for the deemed delivery and then twenty-four hours for the waiting period. We do not believe that this provision unduly burdens a minor's abortion right. Keeping in mind that notice by regular mail, with the deemed delivery provision, serves the dual function of protecting those minors whose parents cannot be located and providing actual notice to a parent when a physician chooses this method of notification, we believe that the legislature appropriately stipulated a constructive delivery time that approximated--or that, in all probability, was less than--delivery time by regular mail. Thus, the constructive delivery provision, in conjunction with the waiting period, survives constitutional scrutiny. See Hodgson, --- U.S. at ----, 110 S.Ct. at 2926 (upholding Minnesota notice statute with an effective waiting period of seventy-two hours: a one day "deemed delivery" constructive notice period followed by a forty-eight hour waiting period); see also Akron II, --- U.S. at ----, 110 S.Ct. at 2972 (upholding Ohio statute that permits a physician, who after a "reasonable effort" has been unable to notify a minor's parent in person or by telephone, to perform an abortion after forty-eight hours constructive notice by both ordinary and certified mail).
 
 3.
 
 22
 In sum, we believe that the Georgia legislature provides a reasonable accommodation between the State's interest in assuring that parents receive notice so that family consultation can take place and a minor's interest in being allowed to carry out her decision to abort as expeditiously as possible. We therefore conclude that the district court abused its discretion by enjoining this provision.
 
 B.
 
 23
 Planned Parenthood also challenges the twenty-four hour waiting period following notification, claiming that it is not narrowly tailored to the State's interest in ensuring that a minor's decision is voluntary and informed. We first note that a minor who wishes quickly to notify her parent of her decision to seek an abortion may avoid the statutory waiting period if she simply furnishes a statement from the parent or guardian verifying that he has been notified. Of course, if the parent or guardian is uncooperative or unavailable, the minor must rely on physician-initiated notification, i.e., notice which does not require affirmative parental action. Under physician-initiated notice--notice in person, by telephone, or by regular mail--the Act requires the minor to wait one day before she obtains an abortion. No waiting period is required, however, if her parent or guardian indicates either that consultation with the minor is unnecessary or that he or she previously had been advised of the minor's wishes. Ga.Code Ann. Sec. 15-11-112(a)(1)(C).
 
 
 24
 We believe that the Georgia consultation period helps ensure that a minor's decision is knowing and intelligent. This becomes apparent when we consider the operation of an act identical to the Georgia Act, but without a waiting period. Under such a statute, the state's interest in promoting parental input in a minor's decision easily could be thwarted. A minor, for example, might visit her physician and inform him of her decision; the physician then would notify the minor's parent or guardian that she is seeking an abortion. The physician's obligation is complete after he makes the call--if the minor's parent asks to speak with the minor to persuade her to talk over the decision with him, the minor (or the physician) could deny the request and proceed with the abortion immediately. Even if the physician persuades the minor to speak with her parent for a few minutes, such circumstances will not be conducive to rational consultation between the minor and parent. The parent likely will be surprised to learn that the minor is seeking an abortion--or even that she is pregnant; in addition, he may not have had an opportunity to clearly formulate his own views on the safety or morality of abortion vis-a-vis childbirth. Any assistance he could provide in a brief phone conversation probably would be minimal. The reasonable approach for the minor and her physician under these circumstances is to postpone the abortion for a reasonable time to allow the parent to collect his thoughts and then discuss the minor's choices rationally.
 
 
 25
 This is, in fact, what the Georgia statute requires a physician to do. Under the Act, a physician, after notifying a parent of the minor's decision to seek an abortion, will tell the parent that the abortion cannot take place for at least twenty-four hours. The parent thus has time to ponder the minor's predicament and the options open to her; hopefully the discussion that ensues is not a rash colloquy--or a unalterable mandate--that merely distances the minor from the family. Rather, this time may
 
 
 26
 provide[ ] the parent the opportunity to consult with his or her spouse and a family physician, ... inquire into the competency of the doctor performing the abortion, discuss the religious or moral implications of the abortion decision, and provide the daughter needed guidance and counsel in evaluating the impact of the decision on her future.
 
 
 27
 Hodgson, --- U.S. at ----, 110 S.Ct. at 2944 (Stevens, J.) (emphasis added).[20] Adopting this reasoning, the Supreme Court upheld a Minnesota statute with a forty-eight hour waiting period, see id. at ----, 110 S.Ct. at 2944 (Stevens, J.) ("The 48-hour delay imposes only a minimal burden on the right of the minor to decide whether or not to terminate her pregnancy.... [T]here is no evidence that the 48-hour period itself is unreasonable or longer than appropriate for adequate consultation between parent and child."); id. at ----, 110 S.Ct. at 2969 (Kennedy, J.) ("[T]he 48-hour waiting period ... is necessary to enable notified parents to consult with their daughter or their daughter's physician."), and this decision now controls the question before us: the Georgia Act is less onerous than the Minnesota Act--it is twice as fast and, in addition, authorizes an abortion immediately if the parent previously has been notified or believes that consultation with the minor is unnecessary.
 
 IV.
 
 28
 The Supreme Court has held that it is constitutionally impermissible for a state to place an absolute veto on a minor's abortion decision. See Danforth, 428 U.S. at 74, 96 S.Ct. at 2843 ("[T]he State may not impose a blanket provision ... requiring the consent of a parent or person in loco parentis as a condition for abortion of an unmarried minor during the first 12 weeks of her pregnancy.... [T]he State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent."); Akron I, 462 U.S. at 439, 103 S.Ct. at 2497 (citing Danforth ). A judicial bypass procedure, however, may cure a parental consent provision that otherwise would be unconstitutional, if the procedure meets the strict standards of Bellotti v. Baird. See Bellotti, 443 U.S. at 640-42, 99 S.Ct. at 3046-47; see also Akron I, 462 U.S. at 439, 103 S.Ct. at 2497 ("a State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial"); Planned Parenthood Ass'n v. Ashcroft, 462 U.S. 476, 491, 103 S.Ct. 2517, 2525, 76 L.Ed.2d 733 (1983) (same). Under Bellotti, a pregnant minor is entitled to show the court either: "(1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." Bellotti, 443 U.S. at 643-44, 99 S.Ct. at 3048 (footnote omitted); see also Akron II, --- U.S. at ----, 110 S.Ct. at 2979. The procedure also must assure both the minor's anonymity and sufficient expedition of the issue and any appeal. Bellotti, 443 U.S. at 644, 99 S.Ct. at 3048 ("The proceeding ... must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." (emphasis added)); see also Akron II, --- U.S. at ----, 110 S.Ct. at 2979-80.
 
 
 29
 In the instant case, the district court applied the Bellotti requirements to the Georgia Act, holding that these requirements are applicable both to consent and notice statutes. The court determined that the Georgia judicial bypass procedure did not guarantee a minor sufficient anonymity and expedition in carrying out her abortion decision. Although a consent statute must contain a waiver provision meeting the Bellotti requirements, the Supreme Court has not addressed the question of whether a judicial bypass procedure necessarily must accompany a parental notification statute, or, if one is required, how it must be fashioned. See Akron II, --- U.S. at ----, 110 S.Ct. at 2978-79; see also H.L. v. Matheson, 450 U.S. 398, 413 & n. 25, 101 S.Ct. 1164, 1173 & n. 25, 67 L.Ed.2d 388 (1981) (upholding a notice statute without a judicial bypass procedure as applied to an immature, dependent minor whose best interests would be served by notice). Given, however, that a notice statute is less onerous than a consent statute, see Matheson, 450 U.S. at 411 n. 17, 101 S.Ct. at 1172 n. 17 (notice statutes do not impose an absolute veto over the minor's abortion decision), a bypass procedure that suffices for a consent statute also must suffice for a notice statute, see Hodgson, --- U.S. at ----, 110 S.Ct. at 2971 (Kennedy, J.); Akron II, --- U.S. at ----, 110 S.Ct. at 2979. After addressing each of Planned Parenthood's challenges to the Georgia judicial bypass procedure, we determine that it meets all of the Bellotti requirements; thus the district court misapplied the constitutional standard in sustaining Planned Parenthood's challenges to this procedure.[21]A.
 
 
 30
 Planned Parenthood first argues that physicians will be unwilling to perform abortions even if a constructive order issues (the court having failed to act within the statutory time frame) because the Act does not require the court to confirm in writing that an abortion is authorized. The Act provides that, when a minor petitions for a waiver of the notification requirements, the court must hear her petition within three days of the filing date, and then must decide it within twenty-four hours of the hearing. Ga.Code Ann. Sec. 15-11-114(d). If the court does not abide by these time limits, the minor's petition is deemed to be granted. Id. The Act does not, however, mandate that the court automatically issue official documentation of the constructive order.
 
 
 31
 The Ohio statute at issue in Akron II contained a constructive authorization provision similar, in all relevant respects, to the Georgia provision.[22] The Court upheld the Ohio statute, despite argument that its criminal penalties deterred physicians from performing abortions since the court did not always issue an affirmative order on which they could rely. The Court first noted that a state may expect its judges to follow mandated procedural requirements absent a demonstrated pattern of abuse or defiance. By providing a constructive authorization for the abortion, the Ohio legislature bestowed a supplemental safety net that ensured expedition of the bypass procedures even if courts deviated from statutorily mandated time limits; this protection went beyond the Bellotti requirements. See Akron II, --- U.S. at ----, 110 S.Ct. at 2981 ("With an abundance of caution, and concern for the minor's interests, Ohio added [a] constructive authorization provision ... to ensure expedition of the bypass procedures even if [the statutory] time limits are not met."). Accordingly, as long as a state imposes a constitutional timetable for the minor's petition to be heard and acted upon, this is sufficient to demonstrate the bypass procedure's expediency.[23] There is thus no constitutional infirmity in this provision of the Georgia Act.
 
 B.
 
 32
 Planned Parenthood also argues that the Act does not sufficiently guarantee the minor's anonymity when she seeks a judicial waiver. In particular, it challenges the Act's requirements that the minor sign her full name in her petition, that her physician provide a statement confirming her pregnancy and trimester of gestation, and that the court's order contain a physical description of the minor. Without further strictures mandating anonymity, Planned Parenthood contends, the Act does not adequately protect against disclosures of the minor's identity to the public--and to court personnel.[24]
 
 
 33
 Although the Act does not permit the petition to be filed under the minor's initials or a pseudonym, it does mandate that all proceedings be conducted in a manner to protect the minor's anonymity, Ga.Code Ann. Sec. 15-11-114(b), (e), and that all records be sealed at the inception of the case, id. Sec. 15-11-114(d).[25] In any waiver hearing, the juvenile court must redact the name of the minor throughout the record, Ga.Unif.Juv.Ct.R. 23.7, and the appellate court must keep the record confidential and then seal it upon the conclusion of the proceedings, Ga.Ct.App.R. 51(j). Such safeguards are adequate to preserve the minor's anonymity.
 
 
 34
 The district court acknowledged that the statutory sealing provision permitted the Act, standing alone, to survive constitutional scrutiny. It held, however, that the absence of a corresponding requirement for sealing in the juvenile court rules might lead the juvenile court to compromise the minor's anonymity. The court noted that while some of these implementing rules mirror certain of the Act's confidentiality requirements, see, e.g., Ga.Code Ann. Sec. 15-11-114(b) ("In no event shall the name, address, birth date, or social security number of such minor be disclosed."); Ga.Unif.Juv.Ct.R. 23.9 ("[T]he juvenile court ... shall not disclose [the minor's] name, address, birth date or social security number in any part of the record."), the sealing provision only appears in the Act.[26]
 
 
 35
 In the absence of evidence to the contrary, we will assume that the Georgia courts will observe the Act's mandate; to hold, as did the district court, that the Rules will confuse court employees, who will not know whether to follow them or the Act, would require us to assume that these employees will ignore the Act--and the Constitution--simply because the court rules do not explicitly provide for sealing.[27] We do not believe that this assumption is proper.[28]
 
 
 36
 The Supreme Court has stated that although an assurance of confidentiality differs from anonymity, the distinction does not have constitutional significance--complete anonymity is not critical. To preserve confidentiality, it is not necessary to allow the use of a pseudonym or a minor's initials on the petition; rather, the state must take reasonable steps to prevent the public from learning of the minor's identity. The fact that some public officials have access to the minor's court record does not compromise the record's confidentiality, nor does it mean that they will make unauthorized disclosures of it. See Akron II, --- U.S. at ----, 110 S.Ct. at 2979-80; see also Jacksonville Clergy Consultation Serv. v. Martinez, 707 F.Supp. 1301, 1303 (M.D.Fla.1989). The Georgia provision thus conforms to the constitutional requirements.
 
 C.
 
 37
 Planned Parenthood also argues that the Uniform Juvenile Court Rules, by permitting an intake officer to screen and possibly divert the minor's petition, impose an impermissible third-party veto over a minor's abortion decision.[29] Uniform Juvenile Court Rule 4.1 provides that for all juvenile court proceedings an intake officer must make a preliminary determination of whether a petition shall be filed:
 
 
 38
 If the allegations appear to be legally sufficient for the filing of a petition, and it further appears that judicial action is in the best interest of the public and the child within guidelines established by the court, the intake officer may endorse a petition. The intake officer may elect to informally adjust, divert, or recommend dismissing the case, within guidelines established by the court.
 
 
 39
 If the intake officer makes a final determination as to whether a minor's legally sufficient petition may be filed (or should be dismissed or diverted), then he is acting as a judge--he is deciding whether the minor must comply with the notice requirements. Yet the standard the officer applies, "best interest of the public and the child," is not the constitutionally mandated one and, assuming the intake officer adopted this interpretation in a particular case, the Act would be unconstitutional as applied.
 
 
 40
 If, on the other hand, the intake officer is merely making a recommendation, which the court can accept or reject, then the court is still the ultimate arbiter of the petition. Thus, when the Uniform Juvenile Court Rules provide that the intake officer may merely recommend the dismissal of the case, they leave the judge--not the intake officer--in control of the proceedings. The intake officer, in addition to recommending dismissal, may "informally adjust [or] divert" the minor's petition if this is in the best interests of the minor and the public. Even if we interpreted this language to allow the officer to do more than suggest minor adjustments in the petition, for the court's convenience, or to temporarily divert the petition while such changes are made, the officer's determination is merely "preliminary." Ga.Unif.Juv.Ct.R. 4.1. Presumably, the judge has the final say on whether the petition may proceed.[30] Additionally, we will not assume, in the absence of evidence to the contrary, that Georgia's intake officers would attempt to use this language to prevent minors from filing petitions that are legally sufficient under the Act--or to slow the processing of such petitions. The best interests of the public and the minor, as the Supreme Court holds, mandate that she be allowed to avoid parental notification if she meets the Bellotti criteria--that she be accorded her constitutional rights. A more generous interpretation of the rule--and an interpretation that comports with the Constitution--is that the intake officer should assist a minor in filing a legally sufficient petition so that the court can determine whether a waiver should be granted.[31] Accordingly, we believe that this rule promotes the proper functioning of the Georgia bypass procedure.
 
 D.
 
 41
 Planned Parenthood also contends that the mandatory appointment of a guardian ad litem, see id. R. 23.2, raises the prospect that the guardian ad litem would oppose the minor's petition based on his own view of the minor's best interests. We are not willing to assume, however, in a facial challenge to the statute, that a court-appointed guardian will assume this role. A guardian ad litem is appointed "to protect the interests of the minor" in a particular matter before the court. See id. In most litigation that is conducted by a guardian ad litem on a minor's behalf, the guardian ad litem, as a part of his duties, must determine whether it is in the minor's best interest to continue, settle, or dismiss the litigation. He makes this determination based upon the likelihood of the action's success and the costs that will be incurred to achieve it. In a minor's action against a tortfeasor, for example, the guardian ad litem may determine that it is in the best interests of the minor to settle; he then is able to compromise the claim, provided he obtains the court's permission. See, e.g., Saliba v. Saliba, 202 Ga. 279, 42 S.E.2d 748, 752 (1947) (guardian has authority to compromise or settle the minor's claim by leave of the court).[32] When a minor seeks a waiver of a parental notice statute, on the other hand, the guardian ad litem faces an exceptional situation. Even if the guardian ad litem conducts a weighing of the costs and benefits of proceeding with the petition, he always will conclude that it is in the minor's best interest to proceed with the petition. To start with, the costs of the bypass procedure are small: the petition already has been filed[33] and the hearing and appeals process proceeds expeditiously with appointed counsel and no filing fees, see Ga.Code Ann. Sec. 15-11-114(a), (f); and the advantages of proceeding are weighty: the minor's constitutional liberty interest, her right to make her own abortion decision, is preserved. Additionally, the waiver petition, in contrast to the tort claim, asks the court what is in the best interests of the minor. If the guardian ad litem answers this question, he usurps the court's role and thereby defeats the minor's constitutional rights. We do not believe that this would be consistent with his legislatively mandated duty "to protect the interests of the minor." The Supreme Court has determined that a minor always should be entitled to decide whether she wishes to have an abortion if she is mature, see Ashcroft, 462 U.S. at 490-91, 103 S.Ct. at 2525; Bellotti, 443 U.S. at 643, 99 S.Ct. at 3048, and in the absence of evidence to the contrary, we will presume that guardians ad litem will act to preserve this right--basing their decisions on the premise that allowing the minor's petition to proceed is, indeed, in her best interest.
 
 
 42
 We also note that, in enacting this Rule, the Georgia legislature appears to have been motivated by a concern for minors who are unacquainted with the judicial bypass procedure or who would be unable to enforce its mandates[34]--a guardian ad litem who is familiar with the conduct of the waiver hearing and appeal offers invaluable assistance to a pregnant minor. We thus believe that the Georgia provision will promote rather than burden the minor's abortion decision.[35]
 
 E.
 
 43
 Finally, Planned Parenthood argues that the Georgia judicial bypass procedure is not sufficiently expeditious, noting that the Act permits a delay of nineteen days or more for a hearing on the petition and the conclusion of the appellate process.[36]
 
 
 44
 The Bellotti plurality stated that courts must conduct a bypass procedure with sufficient expedition to allow the minor an effective opportunity to obtain an abortion. See Bellotti, 443 U.S. at 644, 99 S.Ct. at 3048. When, however, as here, an appellant is challenging the facial validity of a statute, he must show that "no set of circumstances exists under which the Act would be valid." Akron II, --- U.S. at ----, 110 S.Ct. at 2980-81 (quoting Webster v. Reproductive Health Servs., 492 U.S. 490, 524, 109 S.Ct. 3040, 3060 (1989) (O'Connor, J., concurring)). Thus, the mere possibility that a court will utilize all the time allotted to it by the legislature, and thereby extend the petition procedure to nineteen days, would be insufficient to invalidate the statute on its face. See Id. at ----, 110 S.Ct. at 2981 ("[U]nder our precedents, the mere possibility that the procedure may require up to twenty-two days in a rare case is plainly insufficient to invalidate the statute on its face."). In addition, we note that the Ashcroft Court upheld a Missouri statute that contained a bypass procedure requiring seventeen calendar days plus a sufficient time for deliberation and decision-making at both the trial and appellate levels. See Ashcroft, 462 U.S. at 477 n. 4, 491 n. 16, 103 S.Ct. at 2519 n. 4, 2525 n. 16. We thus believe that the Georgia procedure meets the constitutional requirements.
 
 V.
 
 45
 We hold that the Georgia Parental Notification Act's requirements, taken together, do not unduly burden a minor's abortion decision. Georgia has provided a narrowly tailored means to ensure that a minor's decision is voluntary and intelligent. The Act provides the minor and physician with expeditious and reliable means to notify the parents--and to verify that notification has taken place--and a reasonable time for consultation. If the minor is mature or if notification would not be in her best interests, she may petition the court to waive the notice requirement in proceedings that are both expeditious and confidential. The district court abused its discretion by entering a preliminary injunction. The order granting the injunction is accordingly VACATED; Georgia may implement the Act.
 
 
 46
 IT IS SO ORDERED.
 
 
 
 [1]
 The abortion provider is Planned Parenthood of East Central Georgia, Inc.; the abortion counselor, Planned Parenthood Association of the Atlanta Area, Inc. In this opinion, we refer to them collectively as Planned Parenthood
 
 
 [2]
 Before proceeding to an analysis of the merits of this case, we first must determine whether Planned Parenthood or the physician, Dr. Orrin Moore, has standing to bring these claims. Standing doctrine encompasses both constitutional and prudential considerations. For there to be an article III "case or controversy," the plaintiff must have suffered some injury in fact. See Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607-08, 60 L.Ed.2d 66 (1979). Once this showing is made, however, the court weighs prudential concerns that determine whether the plaintiff before the court is the proper plaintiff to sue for that injury. One such prudential limitation is that, as a general matter, a plaintiff cannot assert the rights of third parties in an attempt to find redress for her own injuries. See, e.g., Ashwander v. TVA, 297 U.S. 288, 345-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). This limitation ensures that the party whose right is most directly affected and who, therefore, will likely be the most aggressive advocate of the right, is the one who has the opportunity to assert it. In certain circumstances, however, a court permits a plaintiff who has suffered some concrete injury to assert the rights of a third party because (1) the plaintiff and the third party have a close relationship and (2) the third party faces some obstacle to asserting his own rights. Singleton v. Wulff, 428 U.S. 106, 114-16, 96 S.Ct. 2868, 2874-75, 49 L.Ed.2d 826 (1976)
 The Supreme Court has held that, applying the injury-in-fact and prudential-limitation tests, a minor's physician often is a proper plaintiff to challenge legislation that restricts the minor's abortion decision. Certainly when a physician faces criminal penalties if he violates the statute, as a physician does under the Georgia Act, he suffers sufficient threat of injury in fact to satisfy the constitutional standing requirement, City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 440 n. 30, 103 S.Ct. 2481, 2498 n. 30, 76 L.Ed.2d 687 (1983) (Akron I ); Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973); likewise, when the legislation inflicts direct economic harm on the physician, he suffers concrete injury, Singleton, 428 U.S. at 113, 96 S.Ct. at 2873 (physicians suffered injury in fact when Missouri denied them medicare reimbursement after they performed abortions that were not "medically indicated"; "If the physicians prevail ..., they will benefit, for they will then receive payment for the abortions. The State (and the Federal Government) will be out of pocket by the amount of the payments."); cf. Diamond v. Charles, 476 U.S. 54, 64-67, 106 S.Ct. 1697, 1704-06, 90 L.Ed.2d 48 (1986) (although economic injury can establish injury in fact, pediatrician who claimed that enforcement of restrictive abortion law would increase pool of potential fee-paying patients did not assert direct impact essential for standing). But see Planned Parenthood v. Danforth, 428 U.S. 52, 62 n. 2, 96 S.Ct. 2831, 2838 n. 2, 49 L.Ed.2d 788 (1976) (physician-appellants did not have standing to challenge statute that withdrew parental rights from mothers who, in an attempt to abort, induced live births); Akron Center for Reproductive Health, Inc. v. City of Akron, 651 F.2d 1198, 1210 (6th Cir.1981) (district court properly denied plaintiff-physician standing to challenge post-viability abortion statute where plaintiff never expressed a desire to perform post-viability abortions; "plaintiff did not have 'a sufficiently concrete interest in the outcome' "), aff'd in part, rev'd in part, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). In addition, however, to suffering injury in fact, physicians often will be effective advocates for their minor clients, i.e., they are proper plaintiffs:
 The closeness of the relationship is patent.... A woman cannot safely secure an abortion without the aid of a physician.... Moreover, the constitutionally protected abortion decision is one in which the physician is intimately involved. Aside from the woman herself, therefore, the physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, that decision.
 As to the woman's assertion of her own rights, there are several obstacles. For one thing, she may be chilled from such assertion by a desire to protect the very privacy of her decision from the publicity of a court suit. A second obstacle is the imminent mootness, at least in the technical sense, of any individual woman's claim. Only a few months, at the most, after the maturing of the decision to undergo an abortion, her right thereto will have been irrevocably lost .... It is true that these obstacles are not insurmountable. Suit may be brought under a pseudonym, as so frequently has been done. A woman who is no longer pregnant may nonetheless retain the right to litigate the point because it is " 'capable of repetition yet evading review.' " And it may be that a class could be assembled, whose fluid membership always included some women with live claims. But if the assertion of the right is to be "representative" to such an extent anyway, there seems little loss in terms of effective advocacy from allowing its assertion by a physician.
 Singleton, 428 U.S. at 117-18, 96 S.Ct. at 2875-76 (citations omitted).
 We hold, in accordance with these principles, that Dr. Moore has standing to challenge the Georgia notice statute on behalf of his minor patients. Since Dr. Moore has standing, we need not consider the standing of the other parties. See Carey v. Population Servs. Int'l, 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977) (when court determines that at least one plaintiff has standing to challenge all aspects of asserted claims, it need not determine the standing of other plaintiffs); Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977) (same).
 
 
 [3]
 The physician, Dr. Orrin Moore, was not a plaintiff in that suit--he became a party to the litigation in Planned Parenthood Ass'n v. Harris, 691 F.Supp. 1419 (N.D.Ga.1988) (Planned Parenthood II ). See text infra
 
 
 [4]
 The Supreme Court subsequently adopted the Bellotti plurality opinion as controlling precedent. See Akron I, 462 U.S. at 439, 103 S.Ct. at 2497
 
 
 [5]
 All references hereinafter to "the Act" are actually to the amended Act
 
 
 [6]
 Section 15-11-112(a) provides in full:
 (a) No physician or other person shall perform an abortion upon an unemancipated minor under the age of 18 years unless:
 (1)(A) The minor seeking the abortion shall furnish a statement, signed by a parent, guardian, or person standing in loco parentis and such minor, stating that such parent, guardian, or person standing in loco parentis is the lawful parent or guardian of such minor, or is the person standing in loco parentis of such minor, and that such parent, guardian, or person standing in loco parentis has been notified that an abortion is to be performed on such minor; or
 (B) The physician or an agent gives at least 24 hours' actual notice, in person or by telephone, to a parent, guardian, or person standing in loco parentis of the minor, of the pending abortion and the name and address of the place where the abortion is to be performed; provided, however, that, if the person so notified indicates that he or she has been previously informed that the minor was seeking an abortion or if the person so notified has not been previously informed and he or she clearly expresses that he or she does not wish to consult with the minor, then in either event the abortion may proceed immediately; or
 (C) The physician or an agent gives written notice of the pending abortion and the address of the place where the abortion is to be performed, sent by regular mail, addressed to a parent, guardian, or person standing in loco parentis of the minor at the usual place of abode of the parent, guardian, or person standing in loco parentis. Unless proof of delivery is otherwise sooner established, such notice shall be deemed delivered 48 hours after mailing. The time of mailing shall be recorded by the physician or agent in the minor's file. The abortion may be performed 24 hours after the delivery of the notice; provided, however, that, if the person so notified indicates that he or she has been previously informed that the minor was seeking an abortion or if the person so notified has not been previously informed and he or she clearly expresses that he or she does not wish to consult with the minor, then in either event the abortion may proceed immediately; and
 (2) The minor signs a consent form stating that she consents, freely and without coercion, to the abortion.
 
 
 [7]
 This section provides:
 If the unemancipated minor or the physician or an agent, as the case may be, elects not to comply with any one of the notification requirements of [the Act], or if the parent, legal guardian, or person standing in loco parentis of such minor cannot be located, such minor may petition, on such minor's own behalf or by next friend, any juvenile court in the state for a waiver of such requirement pursuant to the procedures provided for in Code Section 15-11-114. Such juvenile court shall assist the minor or next friend in preparing the petition and notices required pursuant to this Code section. Venue shall be lawful in any county, notwithstanding [the Code's normal venue rules].
 
 
 [8]
 The Court of Appeals Rules provide that, for the purpose of computing time, Saturdays, Sundays, and holidays are included. Ga.Ct.App.R. 51(b)
 
 
 [9]
 Section 15-11-114(d) provides, in pertinent part, that "[a]ll juvenile court records shall be sealed in a manner which will preserve anonymity."
 
 
 [10]
 Dr. Moore joins Planned Parenthood's challenges
 
 
 [11]
 Traditionally, legislation that significantly burdens a woman's abortion decision has been subjected to the strict scrutiny applicable to fundamental liberties. Roe v. Wade, 410 U.S. 113, 155, 163, 93 S.Ct. 705, 728, 731-32, 35 L.Ed.2d 147 (1973); Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 759, 106 S.Ct. 2169, 2178, 90 L.Ed.2d 779 (1986); Akron I, 462 U.S. at 420 n. 1, 427, 103 S.Ct. at 2487 n. 1, 2491; accord Melton v. Gunter, 773 F.2d 1548, 1551 (11th Cir.1985) (dictum); Scheinberg v. Smith, 659 F.2d 476, 482 (5th Cir. Unit B Oct. 1981). Under this standard of review, the state must demonstrate a compelling state interest in burdening the fundamental right, and its legislation must be narrowly tailored to further that interest. Roe, 410 U.S. at 155, 93 S.Ct. at 728. Two state interests may justify a burden on an adult's abortion decision: "preserving and protecting the health of the pregnant woman" and "protecting the potentiality of human life," id. at 162, 93 S.Ct. at 731; but state interference is appropriate only when these interests become compelling. For minors, on the other hand, the state may burden the abortion decision to further the "significant" or "important" state interests, see, e.g., H.L. v. Matheson, 450 U.S. 398, 413, 101 S.Ct. 1164, 1173, 67 L.Ed.2d 388 (1981), in family integrity and the protection of adolescents, id. at 411, 101 S.Ct. at 1172. But see id. at 441 n. 32, 101 S.Ct. at 1188 n. 32 (Marshall, J., dissenting) (although the Court refers to a "significant" rather than a "compelling" state interest, this does not mean that a minor's privacy right necessarily is any less fundamental than an adult's--rather, some state interests inapplicable to adults may justify burdening the minor's right). Accordingly, Georgia's parental notice statute survives constitutional scrutiny if it is narrowly tailored to promote these important state interests. See, e.g., id. at 413, 101 S.Ct. at 1173 ("the statute plainly serves important state interests[ and] is narrowly drawn to protect only those interests"). But see Akron I, 462 U.S. at 438, 103 S.Ct. at 2497 ("[A] state abortion regulation is not unconstitutional simply because it does not correspond perfectly in all cases to the asserted state interest. But the lines drawn ... must be reasonable ....")
 A recent Supreme Court decision suggests, however, that a more lenient standard may be appropriate for legislation that burdens a minor's abortion decision. In Hodgson v. Minnesota, --- U.S. ----, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), six justices tested a parental notice statute under what appears to be a rational-relation (or, alternatively, an intermediate-scrutiny) standard--not a strict-scrutiny standard. In Hodgson, the Court had to determine whether a Minnesota law requiring notice to two parents and a 48-hour waiting period following such notice unduly burdened a minor's abortion decision. Justice Stevens, whom Justice Brennan joined, held that the two-parent notification requirement was not "reasonably related to legitimate state interests"--suggesting merely that if the Court utilized the least stringent standard of review, the two-parent provision still was unconstitutional. Id. at ----, 110 S.Ct. at 2931; see also id. at ----, 110 S.Ct. at 2937 ("Under any analysis, the Minnesota statute cannot be sustained if the obstacles it imposes are not reasonably related to legitimate state interests."). Justice Stevens went on, however, joined only by Justice O'Connor, to uphold the 48-hour waiting period, stating that it "would reasonably further the legitimate state interest in ensuring that the minor's decision is knowing and intelligent." Id. at ----, 110 S.Ct. at 2944. In sustaining this requirement, Justice Stevens relied directly on the "reasonable relation to a legitimate interest" standard. Justice O'Connor, on the other hand, suggested that the rational relation to a legitimate state interest standard applies only "if the particular regulation does not 'unduly burden' the fundamental right." Id. at ----, 110 S.Ct. at 2949-50. With that understanding, she joined Justice Stevens' opinion. Id. at ---, 110 S.Ct. at 2950.
 Justice Kennedy, whom Chief Justice Rehnquist and Justices White and Scalia joined, concurring in the judgment in part and dissenting in part, appears to have adopted a similar standard. Although a majority of the Court had held that Minnesota's two-parent notification requirement was unconstitutional standing alone and was saved only by the act's judicial bypass procedure (the Minnesota act's bypass procedure was activated only if its notice requirements were enjoined), Justice Kennedy believed that the two-parent notification requirement withstood constitutional scrutiny unaccompanied by a bypass procedure. Applying a standard of review similar to that utilized by Justice Stevens, he would have upheld the two-parent requirement: it was "reasonable for the [Minnesota] legislature to conclude," id. at ----, 110 S.Ct. at 2967, that its notice law would further a "legitimate end," id. at ----, 110 S.Ct. at 2963. Presumably, Justice Kennedy applied the same standard of review to the 48-hour waiting period, which a majority of the Court upheld. His opinion, however, only addresses the waiting-period requirement in the following passage:
 The statute before us, including the 48-hour waiting period, which is necessary to enable notified parents to consult with their daughter or their daughter's physician, if they so wish, and results in little or no delay, represents a permissible, reasoned attempt to preserve the parents' role in a minor's decision to have an abortion without placing any absolute obstacles before a minor who is determined to elect an abortion for her own interest as she sees it.
 Id. at ----, 110 S.Ct. at 2969 (emphasis added). Thus, in the only portion of his opinion in which he joins a majority of the Court, Justice Kennedy does not explicitly adopt either a rational-basis or a strict-scrutiny standard. See also Webster v. Reproductive Health Servs., 492 U.S. 490, 520, 109 S.Ct. 3040, 3058, 106 L.Ed.2d 410 (1989) (Rehnquist, C.J., joined by White and Kennedy, JJ.) (plurality opinion) ("The Missouri [abortion law] is reasonably designed to ensure that abortions are not performed where the fetus is viable--an end which all concede is legitimate--and that is sufficient to sustain its constitutionality.").
 In the instant case, the State's interest in ensuring that the minor's decision to abort is knowing and voluntary is important throughout her pregnancy; hence, it is irrelevant for our purposes whether the State must assert a merely important or a compelling state interest: Georgia asserts an interest that meets even the more rigorous standard. We must consider, however, whether the State regulations must be narrowly tailored to further its interests or only reasonably related to those interests. Because we do not believe that a majority of the Supreme Court authoritatively has abandoned that aspect of the strict-scrutiny standard, we demonstrate that the Georgia Act is in fact narrowly tailored to the State's interest, recognizing, however, that the applicable standard in fact may be lower. (We note, in addition, that the Supreme Court precedents may be read to declare a single standard--under this interpretation, the "reasonable relation" formulation merely subsumes the principle that legislation is not constitutionally infirm "because it does not correspond perfectly in all cases to the asserted state interest," see Akron I, 462 U.S. at 438, 103 S.Ct. at 2497. See Roe, 410 U.S. at 155, 163, 93 S.Ct. at 728, 731-32 (abortion legislation must be narrowly tailored to a compelling state interest; but presumably equating narrowly tailored legislation with regulations "reasonably relat[ed] to the preservation and protection of maternal health" (emphasis added)). On the other hand, since Justices Stevens and Kennedy suggested in Hodgson that the state only must assert a "legitimate" interest in its abortion legislation--the interest required under a rational-basis standard of review--we could infer that the state's regulations and the asserted interest need correspond only to the degree necessary under the rational-basis test.)
 
 
 [12]
 The United States Postal Service guarantees overnight delivery between many parts of the country with its express mail service--a delivery time that is substantially shorter than that required for first-class mail service
 
 
 [13]
 When applied, however, in conjunction with the 48-hour "deemed delivery" provision, the court held that the resulting 72-hour delay unduly burdened the minor's abortion right
 
 
 [14]
 When we review a request for a temporary injunction, we ordinarily consider (1) the likelihood the movant will succeed on the merits of his claim; (2) the potential for irreparable harm; (3) the relative burdens on the parties; and (4) the public interest. See Callaway v. Black, 763 F.2d 1283, 1287 (11th Cir.1985). In the instant case, however, the State only contested the likelihood of success on the merits
 
 
 [15]
 We note, however, that two recent Supreme Court cases, Hodgson, --- U.S. at ----, 110 S.Ct. at 2926, and Ohio v. Akron Center for Reproductive Health, --- U.S. ----, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (Akron II ), which were decided since the district court's order, considerably guide our analysis
 
 
 [16]
 Although, for the reasons stated, the Georgia legislature constitutionally could limit written notice to notice by regular first-class mail, we question whether it intended to do so. According to the district court (and Planned Parenthood), the Georgia legislature used the phrase "regular mail" to exclude express mail service from the acceptable forms of delivery: this, the court held, is the clear import of the statutory language. A review of Georgia statutes and cases reveals, however, that "regular mail" ordinarily denotes that certified or registered delivery is unnecessary, see, e.g., Ga.Code Ann. Sec. 19-11-15 (1982 & Supp.1990) (amendment substituted "regular mail" for "certified mail"); Forsyth County Bd. of Educ. v. Trusty, 187 Ga.App. 470, 370 S.E.2d 793 (1988); Ranger v. First Family Mortgage Corp., 176 Ga.App. 715, 337 S.E.2d 388, 390 (1985); S.S. Kresge Co. v. Kicklighter, 135 Ga.App. 114, 217 S.E.2d 418 (1975); State Highway Dep't v. Hall Paving Co., 127 Ga.App. 625, 194 S.E.2d 493, 496 (1972); Floyd v. Polk County, 121 Ga.App. 87, 172 S.E.2d 879 (1970); cf. Ga.Code Ann. Sec. 15-9-86.1(d) (1990) (specifying delivery by "regular first-class mail") (emphasis added); id. Sec. 19-6-33(b) (1990) (same), not that overnight delivery is unacceptable
 
 
 [17]
 While Georgia could assert an interest in requiring certified delivery--the likelihood of delivery into the hands of the parent is enhanced--it chose to allow physicians to use an easier and less expensive means. It would be anomalous to invalidate this Act because the Georgia legislature opted for a more lenient verification method than it constitutionally could require. See Akron II, --- U.S. at ----, 110 S.Ct. at 2972
 
 
 [18]
 The constructive delivery provision of the statute thus is helpful not only when the minor's parent cannot be located; it also provides significant protection for physicians who merely choose to notify through the mails, ensuring that they will not be deterred from performing abortions once they comply with the Act's directives. Since physicians face misdemeanor criminal penalties under the Act, they naturally desire to evidence their compliance with it. While it is certainly possible for a physician to document that he notified a parent by telephone or in person, the constructive notice provision allows a physician to fulfill his duties with more confidence--he simply establishes that he sent a letter to the minor's parent and waited 72 hours before performing the abortion: 42 hours for constructive delivery and 24 hours for the waiting period. It is not his concern whether the notice does or does not reach the parent
 
 
 [19]
 The Act permits a physician to write to a parent at his "usual place of abode."
 
 
 [20]
 Sometimes, of course, supportive consultation will not occur even with a 24-hour waiting period, see id. at ----, 110 S.Ct. at 2955 (Marshall, J., dissenting); but it is at least more likely to occur when a reasonable waiting period is provided
 
 
 [21]
 Although the Supreme Court has left the question open, see Akron II, --- U.S. at ----, 110 S.Ct. at 2979, several courts have held that some type of judicial bypass proceeding is constitutionally necessary to validate a notice statute. See Zbaraz v. Hartigan, 763 F.2d 1532, 1539 (7th Cir.1985); Indiana Planned Parenthood Affiliates Ass'n v. Pearson, 716 F.2d 1127, 1132 (7th Cir.1983); Akron Center for Reproductive Health v. Rosen, 633 F.Supp. 1123, 1131-33 (N.D. Ohio 1986), rev'd, Akron II, --- U.S. at ----, 110 S.Ct. at 2972; Glick v. McKay, 616 F.Supp. 322, 325 (D.Nev.1985). These courts cite dicta in Akron I to support their position; in that case the Supreme Court stated:
 [T]he [Ohio] statute makes no provision for a mature or emancipated minor completely to avoid hostile parental involvement by demonstrating to the satisfaction of the court that she is capable of exercising her constitutional right to choose an abortion. On the contrary, the statute requires that the minor's parents be notified once a petition has been filed, a requirement that in the case of a mature minor seeking an abortion would be unconstitutional.
 462 U.S. at 441 n. 31, 103 S.Ct. at 2498 n. 31 (citation omitted); see also id. at 427 n. 10; 103 S.Ct. at 2491 n. 10 ("state and parental interests must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement " (emphasis added)); cf. Danforth, 428 U.S. at 90-91, 96 S.Ct. at 2850-51 (Stewart, J., concurring) (noting that while the primary constitutional deficiency of a consent statute was its imposition of an absolute limitation on the minor's right to abortion, "a materially different constitutional issue would be presented under a provision requiring parental consent or consultation in most cases but providing for prompt (i) judicial resolution of any disagreement between the parent and the minor, or (ii) judicial determination that the minor is mature enough to give an informed consent without parental concurrence or that abortion in any event is in the minor's best interest" (emphasis added)). Although a notice statute does not permit a third party to veto the minor's abortion decision, these courts observe that some parents will coerce their daughters--even if mature--into accepting their mandate rather than abiding by the daughters' decisions after a period of consultation. Hence, although the daughter legally may obtain an abortion without the parent's consent, this may be impossible as a practical matter. But see Matheson, 450 U.S. at 411 n. 17, 101 S.Ct. at 1172 n. 17 (a requirement of notice to the parents is not the functional equivalent of a requirement of parental consent).
 Despite the concern that some bypass procedure be instituted under a parental notice statute to ensure that a mature minor ultimately may make her own decision and follow through with it, there are indications that the bypass need not conform exactly to the standards enunciated in Bellotti. See, e.g., Akron II, --- U.S. at ----, 110 S.Ct. at 2994 (Stevens, J., concurring in part and concurring in the judgment) ("The Court correctly states that we have not decided the specific question whether a judicial bypass procedure is necessary in order to save the constitutionality of a single parent notice statute. We have, however, squarely held that a requirement of preabortion parental notice in all cases involving pregnant minors is unconstitutional. Although it need not take the form of a judicial bypass, the State must provide an adequate mechanism for cases in which the minor is mature or notice would not be in her best interests." (citation omitted)). For example in H.L. v. Matheson, the Supreme Court upheld a parental notification statute without a bypass procedure. In that case, an immature dependent minor challenged a notification statute, and the Court, citing Bellotti, held that she had no constitutional right to notify a court in lieu of notifying her parents. According to the Court, however, that "case [did] not require [it] to decide in what circumstances a state must provide alternatives to parental notification." Matheson, 450 U.S. at 413 n. 22, 101 S.Ct. at 1173 n. 22. Despite the Court's reservation, Matheson could be read to imply that the second inquiry under Bellotti, whether the abortion would be in the best interests of the minor, is inapplicable to notice statutes--or even that an immature minor never need be afforded a judicial waiver of the notification requirement. This, however, should not necessarily follow since the minor in Matheson presented no evidence that it was in her best interest to have an abortion or to avoid notifying her parents. Id. at 401 n. 3, 101 S.Ct. at 1167 n. 3.
 We, however, do not need to determine the requirements, if any, of a consent substitute for notice statutes; we hold that the Georgia statute comports with the Bellotti requirements. In fact, only one element of the judicial bypass procedure--an element not contested by Planned Parenthood--fails precisely to fit the Bellotti language. Bellotti requires that, in the judicial bypass proceedings, the minor be given the opportunity to show either that she is mature, or, alternatively, that the abortion would be in her best interests. See Bellotti, 443 U.S. at 643-44, 99 S.Ct. at 3048. The Georgia Act, in contrast, waives notification if the court finds either that she is mature or that notification would not be in her best interest. See Ga.Code Ann. Sec. 15-11-114(c)(2). Although the Georgia bypass procedure and the procedure outlined in Bellotti substantially overlap, it is conceivable that some minors, who are not mature but for whom an abortion would be beneficial, now must notify their parents that they are seeking an abortion. This would occur when the abortion and parental notification are in the minor's best interest. We do not believe, however, that this difference is constitutionally significant.
 In Akron II, the Supreme Court examined Ohio's parental notification statute, which instructed the court to approve a minor's petition if:
 (1) "the court finds, by clear and convincing evidence, that the complainant is sufficiently mature and well enough informed to decide intelligently whether to have an abortion," or
 (2) "the court finds, by clear and convincing evidence, that there is evidence of a pattern of physical, sexual, or emotional abuse of the complainant by one or both of her parents, her guardian, or her custodian, or that the notification of the parents, guardian, or custodian of the complainant otherwise is not in the best interest of the complainant."
 Ohio Rev.Code Ann. Sec. 2151.85(C)(1), (2) (Baldwin 1987) (emphasis added). The Court upheld the statute, noting that the Ohio procedure satisfied all of the Bellotti requirements. The Court stated:
 [T]he Bellotti plurality indicated that the procedure must allow the minor to show that, even if she cannot make the abortion decision by herself, "the desired abortion would be in her best interests." We believe that [the statute at issue] satisfies the Bellotti language as quoted. The statute requires the juvenile court to authorize the minor's consent where the court determines that the abortion is in the minor's best interest and in cases where the minor has shown a pattern of physical, sexual, or emotional abuse.
 Akron II, --- U.S. at ----, 110 S.Ct. at 2979 (citation omitted); see also Matheson, 450 U.S. at 414, 101 S.Ct. at 1174 (Powell, J., concurring). We thus believe that the language in the Georgia Act also sufficiently accords with the constitutional standards.
 
 
 [22]
 Ohio Rev.Code Ann. Sec. 2151.85(B)(1) (Baldwin 1987) provides, in pertinent part:
 If the hearing required by this division is not held by the fifth business day after the complaint is filed, the failure to hold the hearing shall be considered to be a constructive order of the court authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parent, guardian, or custodian, and the complainant and any other person may rely on the constructive order to the same extent as if the court actually had issued an order under this section authorizing the complainant to consent to the performance or inducement of an abortion without such notification.
 
 
 [23]
 The Akron II Court also noted that the Ohio Attorney General had represented that a physician could obtain certified documentation from the juvenile or appellate court that constructive authorization had occurred. --- U.S. at ----, 110 S.Ct. at 2981. Such documentation also may be available in the Georgia courts or, as the State suggests, the physician could obtain a copy of the juvenile court docket and the petition, thereby substantiating that no order had been entered within the requisite period. Even if a court official erroneously has entered an incorrect filing date on the docket, the Georgia Act, interpreted broadly, may give the physician immunity from prosecution when he or she relies in good faith on the minor's (or her attorney's or her guardian ad litem's) representation that a constructive order has issued. See Ga.Code Ann. Sec. 15-11-117. Since, however, an interpretation of the "good faith" defense is unnecessary to determine the Act's constitutionality, we do not now speculate on its scope
 
 
 [24]
 Planned Parenthood also argues that the review of a minor's petition by an intake officer, see infra part IV.C, and the mandatory appointment of a guardian ad litem, see infra part IV.D, also compromise the minor's anonymity. We determine, however, that although the guardian ad litem and the intake officer will learn of the minor's identity, this limited disclosure--permitted by the State so that the minor has access to a fair, as well as expeditious, bypass procedure--reasonably preserves the minor's anonymity
 
 
 [25]
 The district court interpreted the Act to require that the records be sealed "during the pendency of the proceeding and never disclosed." We believe this interpretation was correct. See Webster v. Reproductive Health Servs., 492 U.S. 490, 513, 109 S.Ct. 3040, 3054, 106 L.Ed.2d 410 (1989) (statutes should be interpreted to avoid constitutional difficulties); Frisby v. Schultz, 487 U.S. 474, 482-83, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988) (same)
 
 
 [26]
 In fact, the Court of Appeals Rules mandate that the juvenile court record be transmitted to the appellate court under seal, Ga.Ct.App.R. 51(d), and upon conclusion of the appellate proceedings, that it be resealed, id. R. 51(j)
 
 
 [27]
 Even if the Act's confidentiality requirements and those in the rules were inconsistent, Ga.Unif.Juv.Ct.R. 23.3 provides that "all rules in conflict with the provisions of [the Act] are subrogated to [it] for the purpose of implementing the intent of the [Act]."
 
 
 [28]
 In addition to sealing the record, the Act and its implementing rules contain several other provisions that are designed to preserve a minor's anonymity. See Ga.Code Ann. Sec. 15-11-114(b) ("All court proceedings under this Code section shall be conducted in a manner to preserve the complete anonymity of the parties.... In no event shall the name, address, birth date, or social security number of such minor be disclosed."); id. Sec. 15-11-114(e) ("An expedited appeal completely preserving the anonymity of the parties shall be available to any unemancipated minor to whom the court denies a waiver of notice. The appellate courts are authorized and requested to issue promptly such rules as are necessary to preserve anonymity and to ensure the expeditious disposition of procedures provided by this Code section. In no event shall the name, address, birth date, or social security number of such minor be disclosed during the expedited appeal or thereafter."); Ga.Unif.Juv.Ct.R. 23.7 ("The name of the minor shall not appear in any public record, including the transcript of the hearing.... Should reference be made to the minor, the clerk shall obliterate or render illegible the name and substitute initials."); id. R. 23.8 ("The court shall not disclose any information concerning a case arising under [the Act], or permit access to any such file except to the minor who is the subject of the proceeding, the next friend, or the minor's attorney."); id. R. 23.9 ("In the event of an expedited appeal ..., the juvenile court shall insure complete anonymity of the minor by using her initials only to identify her in the complete record sent to the appellate court and shall not disclose her name, address, birth date or social security number in any part of the record."); Ga.Ct.App.R. 51(j) ("All pleadings, briefs, orders, transcripts, exhibits and any other written or recorded material that are part of the record shall be considered and treated by the Court as confidential.")
 
 
 [29]
 The State contends that the Uniform Juvenile Court Rules requiring referral to an intake officer only apply to cases involving delinquency, deprivation, or unruliness. The district court determined that the plain meaning of the rule precluded this interpretation. We agree
 
 
 [30]
 The Uniform Juvenile Court Rules provide that the hearing on the minor's petition shall be conducted by a judge in all instances. See Ga.Unif.Juv.Ct.R. 23.4
 
 
 [31]
 We note that in another context--where a juvenile in police custody is brought before an intake officer pursuant to Ga.Code Ann. Sec. 15-11-19(a)(3) (1990)--the Georgia Supreme Court has held that a function of the intake officer is to ensure that the juvenile's rights are afforded to him and understood by him. Worthy v. State, 253 Ga. 661, 324 S.E.2d 431 (1985)
 
 
 [32]
 If the guardian ad litem is negligent, however, he will be liable to the minor for any damage he has caused. Speck v. Speck, 42 Ga.App. 517, 156 S.E. 706, 707 (1931)
 
 
 [33]
 Under Uniform Juvenile Court Rule 23.2, the guardian ad litem is appointed only after the minor has filed her petition
 
 
 [34]
 If the court does not abide by the statutory provisions, then a writ of mandamus might be required to force it to comply. The minor only could pursue this writ through a guardian ad litem. See Ga.Code Ann. Sec. 9-11-17(c) (Supp.1990). The Act does, however, permit a minor to file a waiver petition on her own behalf. Id. Sec. 15-11-114(a)
 
 
 [35]
 Although neither the Court nor the parties specifically addressed the point, the Supreme Court upheld an Ohio notice statute as applied that required Ohio courts to appoint guardians ad litem for pregnant minors who had filed waiver petitions, Ohio Rev.Code Ann. Sec. 2151.85(B)(2) (Baldwin 1987). See Akron II, ---, U.S. at ----, 110 S.Ct. at 2972; see also Ashcroft, 462 U.S. at 479 n. 4, 103 S.Ct. at 2519 n. 4 (upholding Missouri statute which provided that "the court should appoint a guardian ad litem of the child")
 
 
 [36]
 Planned Parenthood relates the following fictional scenario, which tracks the time needed to conduct the hearing and appeal for a minor who filed her petition in Atlanta on July 1, 1987 (the date the Act was scheduled to take effect):
 Because of the intervention of a weekend and the Independence Day holiday, she would not have been entitled to a hearing until July 7 and to a certified copy of any order denying her petition until the next day, July 8 (twenty-four hours later). Because she was already in Atlanta, and provided she received the copy of the juvenile court order early in the day, she might have been able to file her notice of appeal in the Court of Appeals the same day. The record of the lower court proceedings would not have been due at the Court of Appeals until July 13 ("within five days"). The decision could have been rendered as late as Saturday, July 18; and so, under [Ga.]Ct.App.R. 3, that deadline would have been postponed until Monday, July 20. Provided the remittitur was forwarded to and received by the juvenile court in Atlanta the same day and the minor also obtained an appointment for her abortion that day, [her abortion] would have been delayed ... nineteen days.
 (Footnote omitted.)