## 41214. WORTHY v. THE STATE.

(324 SE2d 431)

HILL, Chief Justice.

Anthony Worthy was found guilty but mentally ill of murder and theft by taking. He was given a life sentence and 20 years to serve respectively, and appeals. Because the evidence of guilt is overwhelming, only a summary of the facts, drawn in part from defendant's confession, is presented here.

On the evening of Saturday, August 13, 1983, Andrew Frost, age 19, argued with his mother, the victim, over whether or not a friend could spend the night with him. When she persisted in refusing his request, he left and did not return that night. On Sunday afternoon at 2:00 p.m. he found his mother lying on her bed bleeding profusely from her head. She was rushed to the hospital, but died later from her wounds. Her car was missing.

That same weekend, Anthony Worthy, the 15-year-old defendant, and Pam Jenkins, age 14, decided to run away to Florida. After spending Saturday night in a park, they went to the victim's home to visit the victim's daughter and, although the daughter was not in, the victim let them in to use the telephone. Jenkins and the victim exchanged several calls with the victim's daughter, who was visiting her father for the weekend. Worthy then hit the victim over the head with Jenkins' sweatshirt in which they had hidden a rock. Worthy said he left the apartment, and because she was still alive, Jenkins hit the victim some more. Jenkins claims Worthy alone hit her 3 or 4 times. The two then left in the victim's car. At about 5:00 p.m., they were involved in an intersection accident to which the police were called. They were arrested after it was discovered that the car was stolen from the victim. Jenkins led officers to the place where the sweatshirt and rock had been discarded and testified against the defendant at his trial.

The jury found him guilty but mentally ill on both the murder and theft by taking (of the victim's car) charges and this appeal followed. He raises 9 enumerations of error.[1]

1. In his first enumeration of error, the defendant urges that because he was a juvenile the superior court had no jurisdiction over the theft by taking count of the 2-count indictment against him.

Paragraph (a) of OCGA § 15-11-5 provides, in effect, that juvenile courts have exclusive original jurisdiction over juvenile matters except crimes for which the juvenile may be punished by loss of or

---

[1] The crime occurred on August 14, 1983. The defendant was convicted on February 18 and was sentenced on February 23, 1984. No motion for new trial was filed. The transcript was prepared and filed on March 16, 1984, and the notice of appeal on March 21. The case was docketed in this court on June 5 and was argued on September 11, 1984.

confinement for life. Paragraph (b) thereof provides in effect that the juvenile court shall have concurrent jurisdiction with the superior court as to crimes punishable by loss of or confinement for life. Theft by taking of an automobile, OCGA §§ 16-8-2, 16-8-12 (a) (4) (A), is within the exclusive jurisdiction of the juvenile court. Thus, defendant argues the superior court had no jurisdiction of the theft by taking count.

On the contrary, in *Relyea v. State*, 236 Ga. 299 (223 SE2d 638) (1976), the defendant was indicted for 6 counts of armed robbery (for which life sentences could be imposed) and one count of motor vehicle theft. This court held that the superior court had jurisdiction of the motor vehicle theft count. In *Relyea*, as here, no petition alleging delinquency based upon the theft of the automobile had been filed in juvenile court.

We hold that the concurrent jurisdiction of the superior court over capital felonies committed by juveniles must necessarily extend to related lesser crimes which are part of the same criminal transaction. To rule otherwise would be to bisect criminal conduct artificially and require the state to follow two procedures with no substantive meaning other than to satisfy procedural requirements, with the end result that the case involving the lesser crime would be instituted in juvenile court and transferred to the superior court, OCGA § 15-11-39, and the juvenile would still be tried for the lesser crime along with the crime giving the superior court concurrent jurisdiction. There is no loss of substantive protection of the juvenile, and the public's rights should not be impeded by meaningless procedural steps which delay the judicial process and conceivably could lead to the frustration of justice under the rigorous requirements of the double jeopardy clause.

*Longshore v. State*, 239 Ga. 437 (238 SE2d 22) (1977), relied on by the defendant, does not require a different result. In fact, *Longshore* is authority for the holding stated above. In that case, Longshore was indicted for the murder of his father and aggravated assault (or aggravated battery; the opinion refers to both) upon his mother. Acknowledging that the crime against the mother came within the exclusive jurisdiction of the juvenile court, this court nevertheless found that the superior court acquired jurisdiction of both offenses upon Longshore's being indicted for murder. Here again, no petition alleging delinquency based upon the crime against the mother had been instituted in juvenile court.

Thus, we find no merit in enumeration of error one.

2. In his second and third enumerations of error, the defendant contends the jury verdict must be construed as finding him guilty of felony murder, and therefore that the verdict on the underlying felony, theft by taking, must be vacated. He argues that under our cases

exemplified by *Burke v. State*, 248 Ga. 124, 125 (281 SE2d 607) (1981), where the jury is instructed as to malice murder and felony murder, a general verdict of guilty of murder must be treated as a verdict of guilty of felony murder and the verdict and sentence as to the supporting felony must be vacated. *Dampier v. State*, 245 Ga. 427, 435 (265 SE2d 565) (1980). The state contends, on the other hand, that by its verdict the jury clearly showed that it found the defendant guilty of malice murder, particularly because the trial court instructed the jury that it must specify felony murder if it so found.

Worthy was indicted, in two counts, for murder "with malice aforethought" and theft by taking the victim's Plymouth Volare. The jury was instructed as to the crimes of malice murder, theft by taking, felony murder, criminal attempt to commit murder, involuntary manslaughter, aggravated assault and simple battery. The jury was charged as to the form of its verdict, as follows: "If you find the defendant guilty beyond a reasonable doubt on any count, then the form of your verdict would be, We, the Jury, find the defendant guilty and specify each count upon which you find him guilty. If you find him guilty of felony murder, then you should so specify. If you find the defendant guilty of the crimes of criminal attempt to commit murder or involuntary manslaughter or aggravated assault with a deadly weapon or simple battery, then your verdict should so state." The jury was charged that if it found the defendant guilty but mentally ill, "you should so specify in your verdict."

The jury's verdict was "On Count One of murder, we, the jury, find the defendant guilty but mentally ill. . . . On Count Two of theft by taking, we find the defendant guilty but mentally ill." We find that the jury was instructed that any verdict other than malice murder on count one should be specified. In light of the instructions given and verdicts returned, we find that the jury intended to, and did, find the defendant guilty of malice murder. See *Stone v. State*, 253 Ga. 433 (321 SE2d 723) (1984). Thus, there is no merit in the defendant's contention that the theft by taking count should be vacated.

Under this ruling and because we have already held in Division 1 that the theft by taking charge was properly before the superior court, there is likewise no merit to the defendant's contention that a verdict of felony murder is invalid. Enumerations of error two and three present no grounds for setting aside the jury's verdicts.

3. The defendant next urges that his custodial statement was improperly introduced into evidence, for three reasons.

The trial court held a Jackson-Denno hearing in order to determine the admissibility of the defendant's statement. Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). After the defendant was arrested, the officers drove to his house and his mother got in the police car with him. She testified that on the way to the

station as the Miranda (v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)) warnings were being read, she requested that she be returned to her home so she could retain an attorney. See Edwards v. Arizona, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). Defendant urges that the testimony of the two police officers that the mother did not request an attorney should not be believed. After hearing all the evidence the trial court found the defendant's statement voluntary and admissible. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. *Crawford v. State*, 245 Ga. 89 (2) (263 SE2d 131) (1980); *Powell v. State*, 252 Ga. 297, 298 (313 SE2d 90) (1984).

Defendant urges next that, due to his mental retardation, the trial court erred in finding that his waiver of rights was knowing and intelligent. We disagree. *Goodwin v. State*, 236 Ga. 339 (1) (223 SE2d 703) (1976); *Williams v. State*, 238 Ga. 298 (1) (232 SE2d 535) (1977); *Corn v. State*, 240 Ga. 130 (3) (240 SE2d 694) (1977).

The defendant also challenges the admissibility of his confession because he was not taken before an impartial juvenile intake officer. See OCGA § 15-11-19 (a) (3). In this connection defendant urges that because the person designated by the juvenile court as juvenile intake officer who, along with his mother, observed his interrogation, was a member of the DeKalb police department, he was not taken before a duly authorized intake officer.

One purpose of requiring that a juvenile court intake officer be notified of the arrest of a juvenile is to insure that the juvenile is detained, if at all, as prescribed in the Juvenile Code. OCGA §§ 15-11-19 (a) (3), 15-11-20. Another purpose is to insure that the juvenile's rights are afforded to him and understood by him. The defendant here challenges the ability of the intake officer to insist upon the juvenile's rights being exercised because of the intake officer's status as a police officer. We decline defendant's invitation to rule that the intake officer's status as a police officer automatically disqualifies him from acting as intake officer. An independent intake officer would nevertheless be an employee of the county. This officer was selected and designated by the juvenile court judge and was charged by law with the proper performance of his duties as intake officer. Defendant and his mother were informed of his rights immediately before questioning began at the police station. They signed waiver forms. Defendant's mother was present during the taking of his statement, which he and she both signed. He acknowledges that no threats were made to him at this time. Thus, defendant does not complain that the intake officer failed to perform any duty imposed upon him. We find no error here.

4. The defendant urges that the trial court erred in refusing to

allow a prior inconsistent statement by Pam Jenkins to be read into the record. We agree. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982); *Burney v. State*, 252 Ga. 25 (1) (310 SE2d 899) (1984). In *Burney*, supra, following the rule announced in *Gibbons*, supra, we held that where a witness takes the stand and is subject to cross-examination, prior inconsistent statements are admissible as substantive evidence as well as for impeachment. The defendant here urges that the first statement to police by Pam Jenkins, in which she denied that she and the defendant murdered the victim, should have been admitted into evidence.

*Gibbons* and its progeny have thus far been cases in which the state sought to introduce a witness' prior inconsistent statement. *Ranger v. State*, 249 Ga. 315 (2) (290 SE2d 63) (1982); *Burney*, supra. The state urges us to limit *Gibbons* to cases in which the witness' statement implicates the defendant and the witness repudiates that statement at trial in an effort to protect the defendant. The state argues that self-serving exculpatory witness' statements such as the one here are inherently untrustworthy and should not be admissible under *Gibbons*. We hold, however, that the search for the truth allowed by *Gibbons* should not be limited to use by the state. As stated there, "the jury can determine whether to believe the present testimony, the prior testimony — or neither." 248 Ga. at 863.

Alternatively, the state urges that any error in this regard was harmless. We agree. When Pam Jenkins testified for the state, she admitted that her first statement, made upon her arrest, was fabricated in order to cover up their crime. She repudiated this statement in a later confession implicating herself and the defendant, and she testified accordingly at the defendant's trial. She was vigorously cross-examined by defense counsel about her first statement, and its contents were known to the jury even though it was not read verbatim into the record. In light of the defendant's own confession, Jenkins' testimony, and the other evidence adduced at the trial, any error in not allowing her first statement to be read to the jury was harmless error. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. Defendant contends the trial court erred in failing to charge on insanity as a defense. At the charge conference, in objecting to a state's request to charge, defense counsel said: "I don't believe insanity is in the case. The testimony is that he understood right from wrong, although there is some testimony that he did not; but that has not been the defense in this case. . . ."[2] After the court instructed the

---

[2] The only conceivable evidence as to insanity appeared during direct examination of the defendant's mother. She was asked:

"Q. Tell me about Anthony; have you tried to teach him the difference between right and wrong?

jury, defense counsel objected to the charge on the ground that the court charged on "guilty but mentally ill" without also charging on "not guilty by reason of insanity." However, as we held in *State v. Ball*, 251 Ga. 840, 841 (310 SE2d 516) (1984), unless there is evidence to support both charges, there is no necessity to charge on insanity when the guilty but mentally ill charge is given.

On appeal, defendant apparently accepts *State v. Ball*, supra, and urges that there was evidence to support a charge on insanity. We find defense counsel's statement to the trial court that insanity was not in the case to be correct and therefore find no error here.

6. The defendant next urges that OCGA § 17-7-131 (a) (2) is unconstitutionally vague. He contends that the statute is basically unintelligible to a jury and provides no guidelines for its application. He submits as evidence to support his argument the fact that the jury asked for reinstruction on this point several times.[3]

Under OCGA § 17-7-131 (a) (2) (as amended by Ga. L. 1982, p. 1476), "mentally ill" means "[1] having a disorder of thought or mood which significantly impairs

"[a] judgment,

"[b] behavior,

"[c] capacity to recognize reality, or

"[d] ability to cope with the ordinary demands of life, or

"[2] having a state of significantly subaverage general intellectual functioning existing concurrently with defects of adaptive behavior which originates in the developmental period. However, the term 'mental illness' shall not include a mental state manifested only by repeated unlawful or antisocial conduct."[4] While this definition, particularly the latter part, is not a model of specificity, the area is certainly one in which a precise definition would be difficult. Moreover, we are dealing here with a possible finding by the jury, not the definition of a crime. Therefore, we find that the statute is sufficient to

---

"A. Yes.

"Q. Would you tell this jury what your experiences have been with Anthony?

"A. Well . . . I have always taught my children right from wrong like everybody should. And he is my son, and I love him, but he never has [given] me any trouble whatsoever.

"Q. Has he indicated or shown anything to you that he has not been able to distinguish sometimes between right and wrong?

"A. Yes.

"Q. Would you tell the jury about that?

"A. Well, like, sometimes, simple questions you might ask him, say, for instance, an attorney and lawyer. He didn't know the difference from attorney and a lawyer. . . ."

[3] We reiterate that insanity was not in issue at the trial, but only guilt, or innocence, or guilty but mentally ill. See Division 5, supra.

[4] Under OCGA § 17-7-131 (g) (h), a person found guilty but mentally ill is sentenced as one found guilty, but further evaluation and appropriate treatment are to be provided, or made a condition of probation.

inform the jury as to the meaning of such a verdict and is not so vague as to deny due process. The uncertainty of the jurors which resulted in their seeking recharge on this statute apparently related to whether its provisions were conjunctive ("and") or disjunctive ("or"). This enumeration of error presents no grounds for reversal of this case. Defendant's argument that the guilty but mentally ill option operates to deprive insane defendants of the defense of insanity will have to await a proper case.

7. The trial court did not err in refusing to give defendant's requests to charge on diminished capacity as they were not correct statements of law.

8. The defendant next complains of the exclusion of a mug shot of Pam Jenkins to "show the difference in appearance between what she looked like at the time of the incident . . . [and how she] has attempted to come in this Court and show herself to be a sweet and innocent young lady." We find any error in the exclusion of this photograph to be harmless. *Johnson v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1985.

*Garland, Nuckolls & Catts, Steven H. Sadow,* for appellant.
*Robert E. Wilson, District Attorney, Robert G. Morton, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.