## 42652. MILAM v. THE STATE.

(341 SE2d 216)

BELL, Justice.

Appellant Willie Morris Milam was indicted for the malice murders of Ben Cheese and Horace Milam. A jury found appellant not guilty by reason of insanity as to Cheese, and guilty but mentally ill as to Horace Milam. Appellant was sentenced to life imprisonment for the murder of Horace Milam, and he now appeals, raising two enumerations of error.[1] We affirm.

There was evidence presented at trial which showed that on the day of the homicide appellant spent several hours at the residence of his father, Horace Milam. Also present were several other members of appellant's family and Cheese, who was a family friend. During the afternoon appellant's stepbrother, Walter Beasley, went to his bedroom, leaving the others in the living area. At approximately 4 p.m. Cheese went to use the bathroom. Appellant went to his father's bedroom and obtained a single-barreled, single-shot shotgun belonging to his father. As Cheese exited the bathroom appellant shot him. Beasley testified that he opened his bedroom door after hearing the gunshot and walked down a hallway toward Horace Milam's bedroom. Appellant, who was standing inside the bedroom, yelled for Beasley to get back, and Beasley returned to his room. Horace Milam stepped over Cheese and went into his own bedroom, where he was shot by appellant. Appellant left Horace Milam's bedroom and ran out of the house with the shotgun. An off-duty police officer observed him exiting the house, and gave chase and arrested him. Autopsies showed that Horace Milam died of a close range wound to the chest, and that Cheese died of a contact wound to the chest and abdomen.

Several family members testified that in the past appellant had told them he heard voices. A psychiatrist who interviewed appellant after the killings testified that appellant told him that he had heard

---

[1] The crimes were committed on July 27, 1984. On October 2, 1984, appellant was indicted in a three-count indictment for the two homicides, and for possession of a firearm while a convicted felon, OCGA § 16-11-131. The charge of possession of a firearm was dead docketed March 7, 1985. The jury returned its verdict on March 7, 1985, and appellant was sentenced on March 8. On March 14, 1985, appellant filed a motion for new trial. On May 10, 1985, the court reporter certified the transcript as ready, and on July 15, 1985, the motion for new trial was denied. On July 29, 1985, Milam filed his notice of appeal. The case was docketed in this court on August 27, 1985, and was orally argued on October 15, 1985.

voices in the past, and that on the day of the killings the voices had made him very angry, and that he had "wanted to blast away everybody." The psychiatrist testified that in his opinion appellant exhibited inappropriate affect during the interview. He said that he could not say whether appellant had known right from wrong at the time of the killings, but he was of the opinion that, based on what appellant told him during the interview, he was mentally ill, specifically, that he suffered from schizophrenia. On cross-examination the psychiatrist stated that appellant now could distinguish right from wrong, but that he could not "apply it to himself" because his illness incapacitated him to make a judgment. Although he did not administer any tests for intelligence and abilities, he felt, based on his professional experience, that appellant was at least borderline retarded.

Appellant took the stand and admitted shooting Cheese and Horace Milam. He testified that on the day of the murder he was angry because he was thinking of horses flying through his head, was seeing demons, and was hearing voices which were driving him mad. He said he had not known what he was doing at the time of the killings, and that he had not meant to kill Cheese and his father. He said that he killed them for no reason, and would not have killed them if he had not been so angry.

1. In his first enumeration of error, Milam contends that the presentation to the jury of the guilty but mentally ill verdict option unconstitutionally infringed on his affirmative defense of insanity. See *Worthy v. State*, 253 Ga. 661, 667 (6) (324 SE2d 431) (1985), where we observed that "[d]efendant's argument that the guilty but mentally ill option operates to deprive insane defendants of the defense of insanity will have to await a proper case."

We find no error, as the record reflects that appellant twice specifically acquiesced in the presentation of this option to the jury. The first acquiescence occurred during a charge conference between the court and counsel. One of the state's requests to charge, No. 7, defined mental illness, and informed the jury that it was authorized to return a verdict of guilty but mentally ill if it believed beyond a reasonable doubt from the evidence that Milam was guilty but mentally ill at the time of the killings. During the charge conference the court informed counsel for appellant that it felt the charges were all right, and asked counsel whether he objected to them. Milam's attorney told the court that he had no objection, and felt that they were all appropriate.

The second acquiescence occurred after closing arguments to the jury, when the court held a supplementary charge conference on the issue of the guilty but mentally ill option. During that conference the court informed counsel for the parties that it thought it should instruct the jury in accordance with OCGA § 17-7-13 (a) (1), which de-

fines "insane at the time of the crime" as meeting the criteria of OCGA §§ 16-3-2 and 16-3-3; OCGA § 17-7-13 (a) (2), which defines the term "mentally ill"; and OCGA § 17-7-13 (b) (1), which specifies the four alternative verdicts in all cases in which the defense of insanity is interposed. Appellant's counsel expressly agreed with the court's plan.

Inasmuch as the record clearly shows that appellant's counsel acquiesced in the presentation of the guilty but mentally ill option to the jury, appellant is estopped from contending on appeal that the option infringed on his defense of insanity.

2. In his second enumeration of error, Milam argues that the verdicts are inconsistent. We find no error.

In a special concurrence to *Hines v. State*, 254 Ga. 386, 387-88 (329 SE2d 479) (1985), Chief Justice Hill stated that he "would abolish our inconsistent verdict rule in criminal cases. See *Dunn v. United States*, 284 U. S. 390, 393-394 (52 SC 189, 76 LE 356) (1932); *United States v. Powell*, 469 U. S. ___ (105 SC 471, 83 LE2d 461) (1984)." After further consideration of his special concurrence this court is now convinced, for the reasons stated by the United States Supreme Court, see *United States v. Powell*, supra, 469 U. S. at ___; 105 SC at 476-479, that the position of Chief Justice Hill ought to be adopted. Therefore, the inconsistent verdict rule in criminal cases is hereby abolished. Since appellant's second enumeration is predicated upon that rule, the abolition of that rule renders the enumeration nugatory.

3. We have reviewed the record, and find that, with regard to the murder of Horace Milam, the evidence supports the jury's rejection of appellant's insanity defense and the verdict of guilty but mentally ill.

With respect to the jury's finding of sanity, "[t]he appropriate standard of appellate review of the sufficiency of the evidence . . . is whether, after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence, that [he] was insane at the time of the crime. *Brown v. State*, 250 Ga. 66, 72 (295 SE2d 727) (1982)." *Butler v. State*, 252 Ga. 135, 136 (311 SE2d 473) (1984).

In determining whether appellant carried his burden of proof on the issue of sanity, we must first address appellant's contention that the jury's verdict of not guilty by reason of insanity as to the killing of Ben Cheese created a presumption that appellant was insane at the time he killed Horace Milam. In *Clark v. State*, 245 Ga. 629, 643-646 (5) (266 SE2d 466) (1980), we held that a defendant's insanity acquittal established that he met the criteria for civil commitment at the time of the crime, and that such a finding, pursuant to OCGA § 24-4-21, raised a presumption of insanity which continued until the de-

fendant's release hearing.

Based on *Clark*, supra, 245 Ga., we hold that appellant's insanity acquittal with regard to the killing of Cheese raised a presumption that he was insane at the time he killed Horace Milam. Accord *Evans v. State*, 159 Ga. App. 776 (1) (285 SE2d 235) (1981); *Whitfield v. State*, 158 Ga. App. 660, 661 (281 SE2d 643) (1981). This presumption of insanity canceled the previously existing presumption of sanity and made it necessary for the state to rebut that presumption, *Butler v. State*, supra, 252 Ga. at 137-138, by producing evidence, inter alia, "of the mental condition of the accused at the time of the offense, or that before and after the offense which tends to show his or her mental condition at the time of the offense. [Cit.]" Id. at 138.

It is now necessary to examine the record to determine whether the jury was authorized to reject appellant's defense of insanity. Initially, we note that, although the psychiatrist testified, first, that Milam told him that he had heard voices in the past and that on the day of the killings those voices had made him very angry, and second, that he was of the opinion that appellant was mentally ill, he did not testify that appellant did not know the difference between right and wrong at the time of the crime. Moreover, unlike *Butler v. State*, supra, 252 Ga., in which the state did not present any evidence of sanity to rebut the presumption of insanity, the state did present evidence of sanity in this case. In this regard the record shows that appellant reloaded the gun after shooting Ben Cheese, and that when he saw Walter Beasley, he merely told Beasley to get back, instead of shooting him. After Beasley retreated, appellant shot and killed Horace Milam when Horace entered the bedroom. From appellant's warning to Beasley, the jury could infer that appellant knew that killing was wrong; that he did not want to kill Beasley; and that the demons he claimed to hear actually did not "make him want to blast away everybody." In addition, appellant's flight from the house is evidence which a rational juror could consider as a factor indicating that appellant knew that his actions were wrong. Finally, the arresting officers testified that appellant was calm and cooperative following his arrest, thus contradicting appellant's testimony that, at the time of the killings, voices were driving him mad and he did not know what he was doing.

Construing the evidence in a light most favorable to the verdict, we find a rational trier of fact could have found appellant guilty but mentally ill beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Clarke, Smith and Gregory, JJ., who dissent.*

GREGORY, Justice, dissenting.

I respectfully dissent.

This case represents more than a mere inconsistency in a jury verdict. It clearly discloses a misunderstanding on the part of the jury regarding the law governing the central issue in the case. Because of that obvious misunderstanding I would allow a new trial.

A single defendant killed two persons on the same occasion. Nothing in the evidence supports a conclusion the mental state of the defendant changed during the short interval between the killings. Yet, as to the count of the indictment regarding the first victim the jury found the defendant, ". . . not guilty by reason of insanity. . . ." As to the count of the indictment regarding the second victim the jury found the defendant ". . . guilty but mentally ill. . . ." That is to say, the verdict pronounced the defendant insane yet sane at the same time.

I recognize a jury's power to disregard the law and through leniency acquit a defendant who it, in reality, believes to be guilty. That is because we do not look behind the jury verdict in the usual criminal case to ascertain the reason for the verdict, and because the State may not appeal the unfavorable verdict. There is no way to test the validity of such a verdict. Thus the verdict stands and if it is based on the decision of the jury to be lenient then we permit that because it serves as another safety valve in the criminal justice system. But the verdict in this case requires no looking behind because expressly stated on its face are opposite findings of fact as to a single issue. I cannot attribute this anomaly to leniency. It is apparent that not leniency but a misunderstanding of the meaning the law gives to the terms "insane" and "mentally ill" caused the discrepancy. In this case where the only issue the jury had before it was the mental state of the defendant I would not allow a verdict infected with such obvious misunderstanding of the law to stand. Therefore, I would reverse.

DECIDED MARCH 12, 1986 —
RECONSIDERATION DENIED APRIL 1, 1986.

*J. Russell Mayer*, for appellant.

*Lewis R. Slaton*, District Attorney, *Michael J. Bowers*, Attorney General, *Eddie Snelling, Jr.*, Staff Assistant Attorney General, for appellee.