The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Lawrence L. BIELECKI, Defendant–
Appellant.

No. 97CA0400.

Colorado Court of Appeals,
Div. V.

Aug. 6, 1998.

Rehearing Denied Oct. 22, 1998.

General, Richard A. Westfall, Solicitor General, Miles D. Madorin, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Lawrence Bielecki, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree burglary, second degree burglary, and third degree assault. He also challenges his adjudication as a habitual criminal. We affirm in part, reverse in part, and remand with directions.

On July 8, 1995, while investigating a reported burglary, police officers saw a person who matched the description given by the victim running away from the area. The police arrested defendant and, upon searching him, discovered jewelry which he admitted belonged to the victim.

After initially pleading not guilty, defendant changed his plea in December 1995 to not guilty by reason of insanity and impaired mental condition. He subsequently filed a motion requesting a bifurcated trial on the issues of sanity and guilt, and asking the court to declare unconstitutional the statutes providing for a unitary trial on these issues. The motion was denied.

Defendant was convicted and sentenced as a habitual criminal to concurrent terms of forty-eight years on the burglary counts and two years on the assault count.

### I. Ex Post Facto Violation

■ Defendant first argues that application of the unitary trial statutes in his case violated constitutional prohibitions against *ex post facto* laws. Specifically, he asserts that because the offenses with which he was charged were committed on July 8, 1995, it was constitutionally impermissible to hold a single trial on sanity and guilt pursuant to statutory provisions enacted January 31, 1996, and made applicable to offenses committed on or after July 1, 1995. We do not agree.

■ *Ex post facto* laws are forbidden by both the United States and the Colorado Constitutions. U.S. Const. art. I, §10; Colo. Const. art. II, §11. A statute violates these constitutional provisions if, among other things, it deprives a defendant of a defense available at the time when the act was committed. *People v. District Court,* 834 P.2d 181 (Colo.1992).

■ A statute is not an unconstitutional *ex post facto* law merely because the facts upon which it operates occurred before the adoption of the statute. Rather, two elements must be present before a criminal law will be stricken down as *ex post facto.* First, the law must be retrospective, that is, it must apply to acts occurring before its effective date and must change the legal consequences of those acts. Second, the law must disadvantage the person affected by it. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994); *People v. Bowring,* 902 P.2d 911 (Colo.App.1995).

Under the Colorado statutory scheme in effect prior to July 1, 1995, the issues raised by a plea of not guilty by reason of insanity, *i.e.,* guilt and sanity, were to be tried separately to different juries, with the defendant's sanity to be tried first. However, in March 1995, as part of a broad-ranging revision of the criminal statutes governing assertion and trial of insanity pleas, the General Assembly amended the statute that had previously provided for separate trials on sanity and guilt by adding a sentence stating: "This section shall apply only to offenses committed before July 1, 1995." Colo. Sess. Laws 1995, ch. 26, §16–8–104 at 74–75.

Although the General Assembly did away with separate trials for sanity and guilt during the 1995 legislative session, it did not spell out the procedures to be followed under the new unitary trial system until the following year. It is the application of these 1996 provisions which defendant challenges here as an *ex post facto* violation.

H.B. 96–1145, Colo. Sess. Laws 1996, ch. 2 at 3–6, was approved January 31, 1996, and made applicable to offenses committed on or after July 1, 1995. Among the provisions which were enacted at that time, and which

defendant asserts should not have been applied in his case, were §16–8–104.5, C.R.S. 1997 (requiring a single trial on sanity and guilt) and §16–8–105.5, C.R.S.1997 (setting forth procedures after acceptance of a plea of not guilty by reason of insanity). Both of these were characterized by the General Assembly in 1996 in its statement of legislative intent as "clarifying provisions" relating to the 1995 enactments. Section 16–8–101.3, C.R.S.1997.

We conclude that application of these 1996 "clarifying provisions" in defendant's case did not violate constitutional proscriptions against *ex post facto* laws. At the time defendant committed the offenses of which he was convicted, and at the time he entered his insanity plea, he had no right to separate trials on sanity and guilt. That right had been eliminated by the March 1995 enactment, effective July 1, 1995. Thus, the 1996 statutes which defendant contends were erroneously applied in his case neither deprived him of a defense available at the time his offenses were committed, *see People v. District Court, supra,* nor changed the legal consequences of his acts. *See People v. Zapotocky, supra.*

Further, even if we accept defendant's contention that he was disadvantaged by having to try sanity and guilt in a single proceeding, this does not without more constitute a violation of constitutional prohibitions against *ex post facto* laws. Nor does the fact that procedures for the new unitary trials were not spelled out until 1996 mean that the trial court should have applied the old, bifurcated trial procedures, as defendant asserts. At the time of the crime and at the time he pled not guilty by reason of insanity, defendant had fair warning that the right to separate trials had been taken away, and that he thus might be required to try guilt and sanity in a single proceeding. *See Gasper v. Gunter,* 851 P.2d 912 (Colo.1993); *People v. Bowring, supra; see also Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (retroactive application of new Florida death sentencing procedures was not *ex post facto* violation where it did not affect the quantum of punishment, even though it might work to the disadvantage of the defendant).

## II. Additional Constitutional Challenges

■ Defendant next raises three related challenges to the constitutionality of the unitary trial statutes. In addressing these issues, we note at the outset that all statutes, including penal statutes, are presumed to be constitutional, and the burden of establishing unconstitutionality is on the party challenging the statute's validity. *Rickstrew v. People,* 822 P.2d 505 (Colo.1991); *People in Interest of R.W.V.,* 942 P.2d 1317 (Colo.App. 1997).

### A. Self–Incrimination

■ Defendant contends that because the unitary trial provisions required him to choose between exercising his right to remain silent and cooperating with psychiatrists in order to establish his insanity defense, these provisions violated his constitutional right against self-incrimination and his rights to due process and a fair trial. We disagree.

Our supreme court has held that holding a single trial on insanity and guilt does not violate a defendant's due process right or his right against self-incrimination. *See Castro v. People,* 140 Colo. 493, 346 P.2d 1020 (1959); *Wymer v. People,* 114 Colo. 43, 160 P.2d 987 (1945). It has also rejected assertions that the privilege against compulsory self-incrimination is violated when psychiatrists who have examined a defendant testify regarding the defendant's statements to them. *See Castro v. People, supra,* 140 Colo. at 505, 346 P.2d at 1026 ("If [defendant] voluntarily elects to exercise the privileges granted by the [insanity] plea he must accept the burdens as well as the benefits which flow from it. One of these burdens is that statements to psychiatrists commissioned by the court will become part of the testimony of the case").

Further, the unitary trial statutes include provisions to protect defendants' right against self-incrimination. Section 16–8–106(2)(b), C.R.S.1997, provides that a defendant shall have a privilege against self-incrimination during an examination to determine sanity, although the fact of his or her non-cooperation with the examination may be

admissible on the issue of sanity. Pursuant to §16–8–107(1.5), C.R.S.1997, evidence acquired for the first time from a communication during the course of a court-ordered sanity examination is generally admissible only as to the issues raised by the defendant's insanity plea, and the jury, at the request of either party, is to be so instructed.

■ Here, the jury was instructed that evidence concerning defendant's statements during his sanity examination was to be considered only to determine whether the defendant had the capacity to form or did form the requisite culpable mental state and for no other purpose. Where, as here, there is nothing in the record to suggest the contrary, the jury is presumed to have followed the instruction. *See People v. McKibben,* 862 P.2d 991 (Colo.App.1993).

### B. Effective Assistance of Counsel

■ Defendant also contends that, under the statutory scheme applicable to his unitary trial, he was denied his federal and state constitutional rights to the effective assistance of counsel. Specifically, he asserts that because he was forced to waive any claim of privilege as to his psychiatric examinations, his counsel's ability to prepare an effective insanity defense was compromised. We are not persuaded.

Section 16–8–103.6, C.R.S.1997, provides that, for purposes of any proceeding on the issue of sanity, a defendant who places his or her mental condition at issue by pleading not guilty by reason of insanity waives any claim of confidentiality or privilege as to communications made to a physician or psychologist.

In *Gray v. District Court,* 884 P.2d 286 (Colo.1994), *cert. denied,* 514 U.S. 1084, 115 S.Ct. 1797, 131 L.Ed.2d 725 (1995), the supreme court held that this statutory waiver extended to any claim of privilege, including attorney-client and physician/ psychologist-patient privileges, by a defendant who placed his mental condition at issue. The *Gray* court also rejected the defendant's assertion that, by requiring disclosure of his medical examinations by defense-retained non-testifying psychiatric experts, §16–8–103.6 and the related statutory scheme violated his Sixth Amendment and state constitutional rights to effective assistance of counsel.

Although *Gray* was decided prior to adoption of the unitary trial procedures, the statutory provisions upheld there are essentially identical to those challenged by defendant as violative of his right to effective assistance of counsel. We conclude that *Gray* is dispositive of defendant's effective assistance claim.

### C. Presumption of Innocence

■ We likewise disagree with defendant's contention that the unitary trial procedures violated his right to due process and a fair trial because they deprived him of the presumption of innocence.

■ A proceeding that combines issues of sanity and guilt does not violate state or federal due process protections. *Castro v. People, supra; cf. Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)(two-stage jury trial for habitual offenders is not unconstitutional under due process clause because of some collateral prejudice to defendant; while all joint trials furnish inherent opportunities for unfairness, jury is expected to follow limiting instructions).

Here, the jury was properly instructed on the presumption of innocence, and there is nothing in the record to indicate that it disregarded those instructions. *See People v. McKibben, supra.*

In sum, we conclude that defendant has not met his burden of establishing unconstitutionality on any of the bases he asserts, and accordingly reject his constitutional challenges to the unitary trial provisions.

### III. Jury Instruction and Special Interrogatories

Defendant next challenges a jury instruction and special interrogatories which, he asserts, precluded the jury from finding him not guilty by reason of insanity as to some but not all of the offenses charged. We agree that a portion of the challenged jury instruction was incorrect, but conclude that the error does not require reversal of defendant's conviction.

Defendant initially pled not guilty by reason of "insanity and impaired mental condition." However, he gave notice prior to trial that he would be asserting insanity pursuant to §16–8–101.5(1)(b), C.R.S.1997, which refers to a mental disease or defect preventing a person from forming a culpable mental state that is an essential element of a crime charged, and thus encompasses what was formerly the affirmative defense of impaired mental condition. *See People v. Bolton,* 859 P.2d 311 (Colo.App.1993)(effect of affirmative defense of impaired mental condition is to negate the existence of an element of the crime charged).

Jury instruction 14 stated:

In this case, a separate offense is charged against the defendant in each count of the information. Each count charges a separate and distinct offense, and the evidence and the law applicable to each count should be considered separately, uninfluenced by your decision as to any other count. The fact that you may find the defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against the defendant.

The defendant may be found guilty or not guilty of any one or all of the offenses charged. However, if the defendant is found guilty of any one or more of the offenses charged, he cannot be found not guilty by reason of insanity as to any other offense charged, and the special verdict forms containing the interrogatories on the issue of insanity shall remain blank.

The trial court gave this instruction over defendant's objection, finding it consistent with the statutory language regarding insanity pleas applicable to offenses occurring on or after July 1, 1995. The court also gave the jury a verdict form with special interrogatories asking, as to each charge, whether the jury found the defendant not guilty by reason of insanity. Like jury instruction 14, the verdict form stated that the interrogatories were not to be answered if the jury found the defendant guilty of any of the charges.

The statute on which jury instruction 14 and the special interrogatories given in this case were based, §16–8–105.5(3), C.R.S.1997, states:

When the affirmative defense of not guilty by reason of insanity has been raised, the jury shall be given special verdict forms containing interrogatories. The trier of fact shall decide first the question of guilt as to felony charges that are before the court. If the trier of fact concludes that guilt has been proven beyond a reasonable doubt as to one or more of the felony charges submitted for consideration, the special interrogatories shall not be answered. Upon completion of its deliberations on the felony charges ... the trier of fact shall consider any other charges before the court in a similar manner; except that it shall not answer the special interrogatories regarding such charges if it has previously found guilt beyond a reasonable doubt with respect to one or more felony charges. The interrogatories shall provide for specific findings of the jury with respect to the affirmative defense of not guilty by reason of insanity.

### 1. Direction Not to Answer Special Interrogatories

■ Defendant first asserts that jury instruction 14 was erroneous because he was entitled to have the jury fill out the special interrogatories on insanity so that he would know the basis for the jury's verdict on each charge. We reject this argument based on *People v. Collins,* 752 P.2d 93 (Colo.1988).

Construing a substantially identical statute on the affirmative defense of impaired mental condition, the supreme court held in *Collins* that the statute did not violate defendant's due process rights, or impermissibly preclude the jury from considering the impaired mental condition defense as to each offense charged, merely by providing that the jury need not answer the special interrogatories on impaired mental condition if it found the defendant guilty on any charge.

The *Collins* court explained that the purpose of the special interrogatories was to

enable the trial court to determine whether an acquitted defendant should be (1) released outright or (2) committed for treatment because impaired mental condition was the sole reason for the acquittal. A finding of guilt on one or more felony counts rendered the interrogatories irrelevant since, once the jury had found the defendant guilty of a felony, he was subject to incarceration in the Department of Corrections at the trial court's discretion, and the reasons for finding him not guilty of other charges were no longer important.

Here, too, defendant was not entitled to have the jury answer the special interrogatories. Once the jury found him guilty of one or more of the charges, the special verdict forms containing the interrogatories on the issue of insanity were irrelevant. It was thus proper to instruct the jury not to answer the interrogatories if it found defendant guilty of any of the charges.

## 2. Directed Verdict

 Defendant also contends that a portion of jury instruction 14 ("if the defendant is found guilty of one or more of the offenses charged, he cannot be found not guilty by reason of insanity as to any other offense charged") in effect directed a verdict on all counts as to the issue of sanity once the jury found him guilty of any charge, and thereby deprived him of his right to trial by jury. We agree that inclusion of this language was error.

Cases from other jurisdictions have recognized that a defendant may be found not guilty by reason of insanity or impaired mental condition as to one charge, and guilty as to other charges, even where all arise out of the same criminal episode. *See State v. Helmick*, 112 Ariz. 166, 540 P.2d 638 (1975); *Lleo v. State*, 601 So.2d 1292 (Fla.Dist.Ct.App.1992)(noting that defendant may have been incapable of forming the intent necessary to support a conviction for aggravated battery, but capable of forming the intent necessary to support a conviction for possession of contraband); *Milam v. State*, 255 Ga. 560, 341 S.E.2d 216 (1986); *State v. Snow*, 513 A.2d 274 (Me.1986); *Commonwealth v. Chandler*, 29 Mass.App.Ct. 571,

563 N.E.2d 235 (1990); *Commonwealth v. Trill*, 374 Pa.Super. 549, 543 A.2d 1106 (1988).

The jury instruction at issue in *People v. Collins, supra,* did not include language such as that challenged by defendant here; and in upholding the jury instruction given in that case, the supreme court noted that the statute on which it was based "does not prevent the jury from finding the defendant guilty on certain charges and not guilty by reason of impaired mental condition on other charges." *People v. Collins, supra,* 752 P.2d at 97. As noted, the statute at issue here, §16–8–105.5(3), is substantially identical to the statute at issue in *Collins.*

We thus conclude it was error to instruct the jury that if defendant was found guilty on any offense he could not be found not guilty by reason of insanity on any other offense. However, we further conclude that, under the circumstances presented here, defendant is not entitled to relief on this basis.

The jury found defendant guilty of first degree burglary, second degree burglary, and third degree assault. It was instructed that the mental state requirement for both first and second degree burglary was "knowingly," but that defendant could be convicted of third degree assault if he acted either knowingly or recklessly. Thus, the jury could in theory have determined that defendant was capable of acting recklessly but not knowingly, and yet have felt itself precluded by the challenged language in instruction 14 from returning a not guilty verdict on first and second degree burglary. *See Lleo v. State, supra.* However, we will not reverse defendant's conviction based on speculation about the basis for the jury's determination, because any uncertainty about what the jury may have intended results from a strategic decision made by defendant at trial.

 On appeal, defendant has argued, and the People concede, that second degree burglary and third degree assault are lesser included offenses of first degree burglary. *See* Section VIII, below. At trial, however, defendant argued that the jury should be instructed on third degree assault as a lesser *non-included* offense.

A lesser non-included offense instruction may be given only if the defendant requests it or consents to it; and a request for such instruction has been described as "in the nature of a strategy." *People v. Skinner*, 825 P.2d 1045, 1047 (Colo.App.1991). Had second degree burglary and third degree assault been properly treated at trial as lesser included offenses of first degree burglary, as defendant now asserts them to be, the jury would have been instructed that it could not consider these lesser included offenses until it decided to acquit defendant on first degree burglary. *See People v. Skinner, supra.* Thus, the jury would not have had to decide if defendant had the requisite mental state for third degree assault unless it had already acquitted defendant of the more serious charges; and defendant would have no basis for arguing on appeal that the jury had wanted to convict him of third degree assault but acquit him by reason of insanity of first degree burglary, but was precluded from doing so by jury instruction 14.

Any confusion on the part of the jury arising out of jury instruction 14 was the result of defendant's strategic decision at trial to request that the jury be instructed on third degree assault as a lesser non-included offense of first degree burglary. Accordingly, because defendant invited the error, he is entitled to no relief on its account. *See People v. McCoy*, 944 P.2d 584 (Colo.App.1996)(under doctrine of invited error, defendant who requested instruction on attempted reckless manslaughter as lesser included offense of first degree murder could not complain of his conviction on the lesser included offense as inconsistent with convictions for assault and conspiracy to commit murder).

### IV. Jury Instruction: Presumption of Sanity

Defendant contends that the court's jury instruction on the presumption of sanity, and the statute on which the instruction was based, impermissibly shifted the burden of proof to him. We reject this argument.

Section 16–8–105.5(2), C.R.S.1997, provides that: "Every person is presumed to be sane; but, once any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt." Consistent with the statute, the jury instruction given here stated:

> The law presumes everyone to be sane. However, after some evidence of insanity is introduced, the burden of proof is upon the People to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was sane at the time of the commission of the crimes charged.

The statutory requirement that some evidence of insanity be introduced to rebut the presumption of sanity is procedural in nature, and does not affect the defendant's substantive right to raise an insanity defense. *People v. Hill*, 934 P.2d 821 (Colo.1997) (discussing identical language in §16–8–105(2), C.R.S.1997).

In *Hill*, the supreme court rejected the defendant's contention that a jury instruction stating that the law presumes everyone to be sane effectively directed a verdict against him. Similarly here, we conclude that the challenged instruction did not impermissibly shift the burden of proof from the prosecution to defendant. The instruction clearly states that the burden was on the People to prove beyond a reasonable doubt that defendant was sane at the time of the commission of the crimes charged; and each elemental instruction likewise indicated that the prosecution had to overcome the affirmative defense of insanity.

Absent a showing to the contrary, we presume the jury understood and heeded these instructions. *See People v. Williams*, 899 P.2d 306 (Colo.App.1995) (rejecting defendant's contention that instructions impermissibly shifted the burden of proof to him, where court had instructed jury that prosecution had burden of proof and there was no showing the jury had not heeded the instruction).

### V. Jury Instruction: Insanity Definition

Defendant also contends that the court's instruction on insanity was erroneous. We disagree.

The instruction in question stated in pertinent part:

> "Insanity" means a person is not accountable who:
>
> Is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act.
>
> — OR—
>
> Suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of the crime charged.

Defendant does not dispute that the instruction accurately sets forth the insanity definitions in §16–8–101.5(1)(a) and §16–8–101.5(1)(b), C.R.S.1997. Rather, he argues that at the time of trial he was contending only that he suffered from an impaired mental condition as described in §16–8–101.5(1)(b), and that the definition based on §16–8–101.5(1)(a) was thus irrelevant and should not have been included because it permitted the prosecutor to argue in closing that defendant knew the difference between right and wrong.

■ The decision to provide a jury with additional written instructions which properly state the law is a matter within the trial court's sound discretion, and will not constitute reversible error absent manifest prejudice or a clear showing of abuse of discretion. *People v. Baca,* 852 P.2d 1302 (Colo.App. 1992) (additional definition of "knowingly" in jury instruction was unnecessary, but did not constitute reversible error); *see also People v. Shearer,* 650 P.2d 1293 (Colo.App.1982) (giving of instruction claimed by defendant to be confusing and inapplicable to facts of case was not reversible error where instructions as a whole adequately informed jury of the law and defendant was not prejudiced).

Here, the trial court decided to include both prongs of the statutory sanity definition in its instruction because a psychiatrist called by the defense had testified extensively regarding both definitions of insanity and the relationship between the two. In light of that evidence, it was not an abuse of discre-

tion for the court to give the jury the complete statutory definition of insanity.

Nor did defendant suffer "manifest prejudice" from the prosecutor's reference to both prongs of the definition in closing argument. Defense counsel emphasized in her closing argument that even if the first definition was not satisfied, the jury could still find that defendant had a mental defect that prevented him from forming a culpable mental state that was an essential element of the offenses charged; and the prosecutor concluded his rebuttal argument with a statement that the issue for the jury was whether defendant was able to form such culpable mental state.

## VI. Jury Instruction: Affirmative Defense

■ Defendant next contends the trial court erred by failing to give the jury an instruction based on *COLJI–Crim.* No. 7:01 (1983) or a similar instruction explaining affirmative defenses. We do not agree.

■ Because defendant failed to request such instruction, we review his claim under the plain error standard. Plain error exists when, after a review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Bogdanov v. People,* 941 P.2d 247 (Colo.1997).

■ The trial court has discretion to determine the form of jury instructions, provided that the jury is adequately instructed on the law. *Burgess v. Mid–Century Insurance Co.,* 841 P.2d 325 (Colo.App.1992).

*COLJI–Crim.* No. 7:01 states that the prosecution must prove the defendant's guilt beyond a reasonable doubt as to the affirmative defense as well as to all the elements of the crime charged, and that if the jury is not convinced beyond a reasonable doubt of defendant's guilt after considering the evidence of the affirmative defense and all other evidence, it must return a not guilty verdict.

Here, the jury was instructed that insanity is an affirmative defense, that the prosecution had the burden of proof as to all elements of each crime, including the burden of proving beyond a reasonable doubt that the

defendant was sane, and that it had to be convinced beyond a reasonable doubt of defendant's guilt before returning a verdict of guilty on any count. Additionally, each elemental instruction directed the jury that it could make a finding of guilt only in the absence of the affirmative defense of insanity.

The instructions given by the court contained the same information as the pattern jury instruction. When viewed as a whole, they adequately informed the jury that the prosecution had to disprove the affirmative defense of insanity beyond a reasonable doubt. *See People v. Fincham,* 799 P.2d 419 (Colo.App.1990). Accordingly, it was not error, let alone plain error, to fail to give *COLJI–Crim.* No. 7:01 or a similar instruction on affirmative defenses.

## VII. *Response to Jury Question*

Defendant claims that the trial court gave an inadequate response to the jury's request, during deliberations, for "definitions or clarification of reckless and bodily injury," and for information regarding second degree assault. Again, we do not agree.

The court conferred with counsel about a response to these and related requests. Defense counsel agreed with the prosecutor's suggestion that the jury be directed to the definitions of reckless and bodily injury in the instructions, and that, as to the other requests, it be told simply that it had received all the law and evidence it could properly consider to decide the case. The court agreed, and responded as counsel had suggested.

Where a defendant actively participates in the preparation of a response to the jury, or expressly agrees to it, he or she is prevented from asserting error with respect to the response. *See People v. Mendez,* 897 P.2d 868 (Colo.App.1995); *People v. Trujillo,* 860 P.2d 542 (Colo.App.1992). Here, defense counsel expressly agreed to the prosecution's proposed response to the jury's questions. Accordingly, defendant cannot now complain that the responses were improper.

## VIII. *Lesser Included Offenses—Merger*

Defendant also argues that second degree burglary and third degree assault are lesser included offenses of first degree burglary, and that his convictions on these counts must thus be vacated because they merge into his conviction for first degree burglary. The People concede this argument, and we agree.

Accordingly, the case must be remanded to the trial court to vacate defendant's convictions and sentences on these two counts. *See Armintrout v. People,* 864 P.2d 576 (Colo. 1993).

## IX. *Habitual Criminal Proceedings: Admission of Evidence*

Defendant asserts that the trial court erred in admitting certain evidence in support of his adjudication and sentence as a habitual criminal. Again, we are not persuaded.

Section 16–13–102, C.R.S.1997, governs the admission of evidence in habitual criminal proceedings. It provides that a duly authenticated copy of the record of former convictions and judgments is prima facie evidence of the conviction and may be used as evidence at the habitual offender sentencing. The prosecution must prove defendant's prior convictions beyond a reasonable doubt. Sections 16–13–103(4) and 16–13–103(5), C.R.S.1997. *See generally People v. Copeland,* —— P.2d ——, 1998 WL 455587 (Colo. App. No. 96CA1992, August 6, 1998).

Certified copies of public records provide proper authentication of former convictions and judgments for purposes of §16–13–102. Contrary to defendant's contention, there is no requirement of a reciprocal attestation of the judge and the clerk on the documents. *See People v. Johnson,* 699 P.2d 5 (Colo.App.1984).

Additionally, documents which are admissible under certain rules of evidence may also be used to support a habitual criminal conviction. Documents admitted pursuant to CRE 901(b)(7), which governs public records, and CRE 902(1) and (4), which covers self-authenticating documents, can support a conviction under §16–13–102. *See*

*People v. Deskins,* 904 P.2d 1358 (Colo.App. 1995), *aff'd in part, rev'd in part on other grounds,* 927 P.2d 368 (Colo.1996).

Our review of the record indicates that each of the documents submitted to support defendant's conviction as a habitual criminal was duly authenticated as required by §16–13–102. Each conviction was certified as true and correct by the custodian of records and was accompanied by a seal.

Accordingly, we conclude that the trial court properly admitted the evidence of defendant's prior convictions.

### X. Habitual Criminal Conviction: Sufficiency of Evidence

Finally, we reject defendant's contention that there was insufficient evidence to support his conviction as a habitual criminal. In support of this contention, he again asserts that the trial court admitted unauthenticated, improperly authenticated, or conflicting mittimuses and other documents, and that it considered irrelevant transcripts. However, there is nothing in the record to indicate that the trial court based its habitual criminal determination on anything other than evidence which, as we have concluded above, was properly admitted. That evidence, along with the evidence identifying defendant, was sufficient to support the habitual criminal conviction. *See* §16–13–103, C.R.S.1997.

The judgment is reversed as to the convictions for second degree burglary and third degree assault, and the cause is remanded to the trial court with directions to enter a corrected mittimus vacating defendant's convictions and sentences on those counts. In all other respects, the judgment is affirmed.

TAUBMAN and ROY, JJ., concur.