## S99A1775. FLOYD v. THE STATE.
(525 SE2d 683)

CARLEY, Justice.

Along with Antonio Lowery, Inez Ottis and her brother Rudolph Ottis, the grand jury indicted Robert Floyd for the malice murders of seven-year-old Britney Ikharia and fifteen-year-old Bridgett Lee. The victims were the daughters of Barbara Jenkins. Ms. Jenkins and Ms. Ottis were mutually involved in the drug trade but, before the murders, their relationship ended acrimoniously. The State's theory was that the four indictees went to Ms. Jenkins's apartment to steal her drugs and money, and committed the murders because the children knew Ms. Ottis and could identify her. In his post-arrest statement, Floyd admitted that he stole a car and drove with the other three to Ms. Jenkins's residence, but he denied that he left the automobile or participated in the homicides. Mr. Lowery pled guilty and offered to testify for the State. Thereafter, a jury convicted Ms. Ottis and her brother of both murders. On appeal, this Court affirmed their convictions and life sentences. *Ottis v. State,* 271 Ga. 200 (517 SE2d 525) (1999); *Ottis v. State,* 269 Ga. 151 (496 SE2d 264) (1998). The jury found Floyd guilty of the murder of Bridgett, but not guilty of the murder of Britney. After the State withdrew notice of its intent to seek the death penalty, the trial court entered its judgment of con-

---

viction on the jury's verdict and sentenced Floyd to life imprisonment. Floyd moved unsuccessfully for a new trial, and now he brings this appeal.[1]

1. Mr. Lowery testified against Floyd, and directly implicated him in the fatal stabbing of Bridgett. Floyd contends that the testimony was uncorroborated and, thus, insufficient to authorize his conviction for the murder. Corroboration "may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that the defendant participated in the crime. [Cit.]" *Klinect v. State*, 269 Ga. 570, 572 (1) (501 SE2d 810) (1998). Also, the accused's own statement can serve to corroborate his accomplice's inculpatory testimony. *Wisenbaker v. State*, 259 Ga. 416, 417 (383 SE2d 132) (1989).

Mr. Lowery's testimony implicating Floyd in the criminal conspiracy was corroborated by Floyd's post-arrest statement, wherein he admitted supplying a stolen vehicle and driving with the others to Ms. Jenkins's apartment to obtain drugs. See *Parkerson v. State*, 265 Ga. 438, 439 (2) (457 SE2d 667) (1995). Floyd's claim that, after arriving at the apartment, he did not participate in the murders is inconsistent with his subsequent actions. A witness who had no connection with commission of the murders would be expected to inform the authorities of the identity of the actual perpetrators. See *Ottis v. State*, 269 Ga., supra at 155 (3). Floyd did not do so. Indeed, the evidence is that he attempted to conceal his own involvement, and even wrote to Mr. Lowery to encourage him not to tell the truth about the homicides. "A defendant's attempts to conceal his participation in an offense can corroborate his accomplice's testimony regarding his participation. [Cits.]" *Drake v. State*, 245 Ga. 798, 803 (4) (267 SE2d 237) (1980), overruled on other grounds, *Harwell v. State*, 270 Ga. 765, 770 (512 SE2d 892) (1999).

The jury generally determines the weight of the corroborating evidence, and even slight evidence of corroboration connecting the accused to a crime is legally sufficient. *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). That standard was met here. See *Klinect v. State*, supra at 572 (1). Thus, when construed most strongly in support of the verdict, the evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Floyd was guilty of the malice murder of Bridgett. *Jack-*

---

[1] The murder occurred on January 6, 1993. The grand jury returned the indictment against Floyd and the others on April 13, 1995. The jury found Floyd guilty on November 21, 1996. Floyd filed a motion for new trial on December 12, 1996, and the trial court denied that motion on June 2, 1999. On June 23, 1999, Floyd filed his notice of appeal, and the case was docketed in this Court on August 27, 1999. Floyd submitted his appeal for decision on October 18, 1999.

*son v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Ottis v. State,* 271 Ga., supra at 200 (1); *Ottis v. State,* 269 Ga., supra at 153 (1).

2. On voir dire, Floyd moved unsuccessfully to strike for cause Dahil Goss because she was employed as a federal prosecutor. In *Beam v. State,* 260 Ga. 784, 786 (2) (400 SE2d 327) (1991), we held that the trial court erred in refusing to grant a motion to excuse for cause a prospective juror who "was an employee of the same district attorney who prosecuted the appellant . . . ." That holding is inapplicable here, however, since Ms. Goss is employed by a different prosecuting authority than that which was pursuing the case against Floyd. There is no "appearance of impropriety" where the prospective juror has no connection to the district attorney or solicitor who is conducting the prosecution at issue. *Carr v. State,* 267 Ga. 547, 553 (5) (480 SE2d 583) (1997). See also *Roberts v. State,* 261 Ga. 813 (1) (411 SE2d 496) (1992); *Jackson v. State,* 202 Ga. App. 223 (414 SE2d 262) (1991).

Floyd also relies upon *Hutcheson v. State,* 246 Ga. 13 (1) (268 SE2d 643) (1980), "[b]ut we have refused to extend the automatic disqualification rule in *Hutcheson* to those less connected with law enforcement than full-time police officers. [Cits.]" *Mosher v. State,* 268 Ga. 555, 557 (2) (491 SE2d 348) (1997). Compare *Terrell v. State,* 271 Ga. 782 (523 SE2d 14) (1999). Unlike a police officer, a prosecuting attorney is an officer of the court. In that capacity, Ms. Goss had a duty to seek justice, not merely to obtain convictions. *Carr v. State,* 267 Ga. 701, 712 (10) (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State,* 271 Ga. 6, 10 (5) (515 SE2d 155) (1999). A review of her voir dire shows that she was well aware of her obligation in this regard and that she affirmed her impartiality as between Floyd and the State. Because the record shows that Ms. Goss had no compelling bias or interest in the outcome of the case which would disqualify her as a matter of law, the trial court did not abuse its discretion in failing to strike her for cause. *Garland v. State,* 263 Ga. 495, 497 (1) (435 SE2d 431) (1993).

3. Although two African-American women were seated on the jury, Floyd made a *Batson* motion because the State used peremptory strikes to excuse three others. The prosecutor provided reasons for exercising the strikes. The trial court found those explanations to be sufficiently race-neutral, and denied the *Batson* motion. On appeal, Floyd urges that his motion was meritorious because the State's reasons were a pretext for racial discrimination in the selection of the jury.

All three of the prospective jurors expressed reservations about the death penalty. Their opposition to capital punishment was a neutral and case-related reason for employing the peremptory strikes,

since the State did not withdraw its notice to seek imposition of that sentence until after the jury returned its guilty verdict. Although the prospective jurors' conscientious aversion to the death penalty was not sufficient to require an excusal for cause, it was a valid, non-pretextual reason to justify the State's use of a peremptory strike to remove them. *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992).

The State used a strike against one of the three for the additional reason that she had a close family member who had been prosecuted for selling drugs. "The criminal history of a prospective juror's family is a sufficiently neutral reason to justify a peremptory strike. [Cits.]" *Jenkins v. State*, 269 Ga. 282, 290 (11) (498 SE2d 502) (1998). Yet another expressed doubts about the credibility of drug users, which was of some concern to the State because several of its witnesses had involvement with drugs. "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike." *Hall v. State*, 261 Ga. 778, 780 (2) (a) (415 SE2d 158) (1991).

To prevail on his *Batson* challenge, Floyd "had the burden of proving that the State engaged in purposeful discrimination in the exercise of its peremptory strikes." *Williams v. State*, 271 Ga. 323, 324 (2) (519 SE2d 232) (1999). The trial court's finding that Floyd failed to satisfy his burden of proof is entitled to great deference and will be accepted unless clearly erroneous. *Roundtree v. State*, 270 Ga. 504, 507 (5) (511 SE2d 190) (1999). When that standard is applied to the trial court's ruling in this case, we must uphold the denial of the *Batson* motion.

4. Floyd asserts that the trial court abused its discretion by admitting into evidence numerous photographs of the victims and a videotape of the murder scene. Generally, pre-autopsy photographs are admissible to illustrate the nature and extent of a murder victim's wounds and the location of the body at the crime scene. *Hayes v. State*, 268 Ga. 809, 812 (5) (493 SE2d 169) (1997); *Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994). Here, the numerous photographs were material, relevant and admissible for these purposes, even if they were to some extent duplicative. *Jackson v. State*, 270 Ga. 494, 498 (8) (512 SE2d 241) (1999). The videotape also "was relevant and admissible, even though it duplicated still photographs. [Cit.]" *Jackson v. State*, supra at 498 (8). The evidence is similar, if not identical, to that properly admitted at the trial of Ms. Ottis, and the trial court did not abuse its discretion by ruling that the photographs and tape were admissible against Floyd. See *Ottis v. State*, 269 Ga., supra at 156 (4).

5. Over Floyd's hearsay objection, the trial court allowed a prosecution witness to testify to a statement made by Mr. Ottis concerning

the crime. This issue is controlled by our holding in *Ottis v. State*, 269 Ga., supra at 154 (3) that the testimony is admissible as a declaration made by one conspirator against a co-conspirator during the course of the conspiracy.

6. Floyd enumerates as error the trial court's failure to charge the jury that it was authorized to consider a witness's prior inconsistent statement as substantive evidence. See *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). The record shows that, although he requested a charge on impeachment, he did not submit a written request to instruct the jury on the correlative principle that prior inconsistent statements constitute substantive, as well as impeaching, evidence. "In the absence of a written request for such a charge, it is not error for the trial judge to fail to charge the jury on the issue of conflicting statements made by a witness." *State v. Stonaker*, 236 Ga. 1, 3 (222 SE2d 354) (1976). Moreover, a failure to charge on the *Gibbons* principle constitutes harmless error, "as '(a)bsent instructions to the contrary, the jury surely regarded substantively *all* the evidence presented to it. (Cit.)' [Cit.]" (Emphasis in original.) *Caldwell v. State*, 263 Ga. 560, 564 (11) (436 SE2d 488) (1993).

7. Floyd contends that the verdicts are inconsistent, because the evidence showed that he was guilty of both murders or not guilty of either. In *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), this Court abolished the inconsistent-verdict rule in criminal cases. Here, as in *Smashum v. State*, 261 Ga. 248, 249 (2) (403 SE2d 797) (1991), "[w]e decline to overrule *Milam*, and find no merit to this enumeration."

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 18, 2000 —
RECONSIDERATION DENIED FEBRUARY 11, 2000.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Moore, Assistant Attorney General*, for appellee.